# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ADT SECURITY SERVICES, INC., | Civil No. 07-2983 (JRT/AJB) |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| VICKI SELIGER SWENSON, as Personal Representative of the Estate of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent; T.M.L., T.B.L., T.J.L., and T.M.L., minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson; | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT HAWKINSON'S MOTION TO DISMISS** |
| Defendants/Counterclaimants, | |
| and | |
| TIMOTHY J. HAWKINSON, JR., as Personal Representative of the Estate of Timothy Jon Hawkinson, Sr., | |
| Defendant. | |

Molly M. Borg and Eric J. Magnuson, **BRIGGS & MORGAN, PA**, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402; Charles C. Eblen and J. Stan Sexton, **SHOOK, HARDY & BACON, LLP**, 2555 Grand Boulevard, Kansas City, MO 65108, for plaintiff/counterclaim defendant.

Lori L. Barton, William D. Harper, and Paul D. Peterson, **HARPER & PETERSON, PLLC**, 3040 Woodbury Drive, Woodbury, MN 55129; for defendants/counterclaimants T.M.L., T.B.L., T.J.L., T.M.L., and Vicki Seliger Swenson.

Alf E. Sivertson, **SIVERTSON & BARRETTE**, 1465 Arcade Street, St. Paul, MN 55106, for defendant Timothy J. Hawkinson, Jr.

This case is before the Court on defendant Timothy J. Hawkinson, Jr.'s Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

This case arises out of the tragic murders of Terri Lee and Timothy J. Hawkinson, Sr. ("Hawkinson"). On July 29, 2006, Steve Van Keuren, Lee's ex-boyfriend, broke into Lee's home and attacked her. On August 3, 2006, after Van Keuren had been released on bond, plaintiff ADT entered into a residential services contract ("Agreement") to install a security system in Lee's home. Hawkinson was Lee's boyfriend at the time, and was present for these negotiations. Hawkinson agreed to pay for the security system, and his signature appears on the Agreement in a section marked "Billing." On September 22, 2006, Van Keuren broke into Lee's home and killed both Lee and Hawkinson.

After extensive media coverage and indications that representatives of Lee and Hawkinson may initiate litigation, plaintiff filed this action seeking declaratory relief. In sum, plaintiff asks the Court to declare that its liability to the defendant estates of both Lee and Hawkinson is limited to $500.00, in accordance with a limited liability provision included in the Agreement. Defendant Hawkinson, Jr. now files this motion to dismiss pursuant to Rule 12(b)(6), arguing that ADT's claim for declaratory relief against the estate of Hawkinson fails as a matter of law because Hawkinson was not a party to the Agreement.

## ANALYSIS

## I.      STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must state "a claim to relief that is plausible on its face." *Id*. at 1974.

## II.     ADT'S CLAIM AGAINST HAWKINSON'S ESTATE

Plaintiff's complaint includes the following allegations: (1) "On or about August 3, 2006, Lee/Hawkinson executed the Agreement with ADT for the sale, installation and monitoring of a security alarm at Lee's residence[;]" (2) "Hawkinson . . . signed the Agreement and assumed responsibility for payments due under the Agreement[;]" and (3) "Lee/Hawkinson agreed that ADT would assume limited liability[.]" Defendant concedes that Hawkinson signed the Agreement, but contends that he did so "only to authorize the use of his credit card to pay for the installation of the security system." Defendant contrasts the placement of this signature, which is found in

the "Billing" section of the Agreement, with the location of Lee's signature on the agreement, which is found in a box labeled "customer's approval."[1]  Defendant also notes that where the Agreement asks for the "customer's" name and address, the only information provided is for Lee.  Defendant contends that this is sufficient to demonstrate that Hawkinson was not a party to the Agreement, and is not bound by any contractual limitations of plaintiff's duties or liabilities.  Plaintiff responds that it clearly stated "a claim to relief that is plausible on its face" by alleging that Hawkinson executed the agreement, signed it, and supplied consideration.[2]

The Court agrees that at this stage of the proceedings – when all ambiguities in the sufficiency of plaintiff's complaint are resolved in its favor – plaintiff's claims against defendant Hawkinson are sufficient to go forward.  It is true that the face of the Agreement does not make Hawkinson's status entirely clear.  While Hawkinson clearly undertook contractual obligations of *some* kind by signing the agreement, it is possible

---

[1]  The Agreement was attached to plaintiff's complaint and was cited and quoted throughout plaintiff's allegations.  Consequently, the Court is free to examine that Agreement in the context of a motion to dismiss.  *See Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (noting that courts may consider documents that complaints "incorporate by reference").

[2]  Plaintiff also supplies a number of documents outside of the complaint, purporting to demonstrate that "Hawkinson initiated the transaction for the alarm system at the Lee home; assumed a lead role negotiating the agreement; assumed a lead role deciding what alarm equipment to purchase for Lee's residence; is a signatory to the Agreement; paid for the alarm system; was a primary user of the alarm system and knew all relevant codes; 'drilled' family members on the use and operation of the alarm system; made ADT aware that he stayed at the home; referred to the alarm system as being his own in recorded call with ADT; and initiated communications regarding service, warranty, and other issues pertaining to the Agreement."  The additional materials cited by defendant do not "merely reiterate what is said in the pleadings," and may not be considered without converting the motion into one for summary judgment.  *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999).  The Court has not considered these materials, and this motion remains one for dismissal under Rule 12(b)(6).

that he did not intend to enter the type of contractual relationship that would have implicated the limited liability provision.   However, in order for the Court to grant defendant's Rule 12 motion, it would have to conclude that the placement of Hawkinson's signature is so definitive that there is no set of surrounding circumstances that could have rendered Hawkinson bound under the provision.  *See Coleman*, 40 F.3d at 258 (standard of review).  That is not the case.  While Hawkinson's status may have been clearest if he had signed the agreement as a "customer" as well as a payor, a signature is not the only way to enter into a contract in Minnesota.  "[A] manifestation of mutual assent essential to the formation of a contract . . . may be inferred wholly or partly from words spoken *or* written *or* from the conduct of the parties *or* a combination thereof." *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962) (emphasis added).  If it would have been possible for Hawkinson to assume obligations without a signature at all, it must also have been possible for him to do so here, where his signature was merely in an ambiguous location in the Agreement.

The sole case relied on by defendant does not weigh in favor of a different conclusion.   Defendant points to *Manderfeld v. Krovitz*, 539 N.W.2d 802 (Minn.  Ct. App. 1996), in support of the proposition that "a person cannot be held to a contract with a party with whom he never intended to contract."   However, Hawkinson's subjective beliefs, whatever they may have been, are not determinative.   "The test of contractual formation is an objective one, to be judged by the words and actions of the parties and not by their subjective mental intent."  *Hill v. Okay Constr. Co., Inc.*, 252 N.W.2d 107, 114 (Minn. 1977).  Plaintiff is entitled to an opportunity to show that Hawkinson's words and

actions, in conjunction with his signature in the "Billing" section of the Agreement, objectively demonstrated his intent to be bound under the limited liability provision.[3]

In summary, plaintiff's complaint explicitly alleges that Hawkinson "agreed" to the limited liability provision, in addition to executing and signing the Agreement and agreeing to supply consideration. Those allegations, if proven, would be sufficient to demonstrate that Hawkinson was bound under the limited liability provision. Accordingly, defendant's motion to dismiss is denied.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion to Dismiss [Docket No. 10] is **DENIED**.

DATED:    March 12, 2008                           s/ John R. Tunheim
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                   United States District Judge

---

[3] Moreover, in *Manderfeld* the party in question was not even aware of the disputed contract when it was being made. 539 N.W.2d at 806. Here, plaintiff alleges that Hawkinson was an active participant in the Agreement negotiations.