## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ADT SECURITY SERVICES, INC., | Civil No. 07-2983 (JRT/AJB) |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| VICKI SELIGER SWENSON, as Personal Representative of the Estate of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent; T.M.L., T.B.L., T.J.L., and T.M.L., minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson; | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OF CERTAIN CLAIMS** |
| Defendants/Counterclaimants, | |
| and | |
| TIMOTHY J. HAWKINSON, JR., as Personal Representative of the Estate of Timothy Jon Hawkinson, Sr. | |
| Defendant. | |

---

Eric J. Magnuson and Molly M. Borg, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402-2157; Charles C. Eblen and J. Stan Sexton, **SHOOK, HARDY & BACON, LLP**, 2555 Grand Boulevard, Kansas City, MO 65108-2613, for plaintiff/counterclaim defendant.

Paul D. Peterson, Lori L. Barton, and William D. Harper, **HARPER & PETERSON, PLLC**, 3040 Woodbury Drive, Woodbury, MN 55129-9617, for defendants/counterclaimants Vicki Seliger Swenson, T.M.L., T.B.L., T.J.L., and T.M.L.

Alf E. Sivertson, **SIVERTSON & BARRETTE**, 1465 Arcade Street, St. Paul, MN 55106-1723, for defendant Timothy J. Hawkinson, Jr.

This case is before the Court on plaintiff and counterclaim defendant ADT Security Services, Inc.'s Amended Motion for Judgment on the Pleadings of Certain Claims.  For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

This case arises out of the tragic murders of Terri Lee and Timothy J. Hawkinson, Sr. ("Hawkinson").  On July 29, 2006, Steve Van Keuren, Lee's ex-boyfriend, broke into Lee's home and attacked her.  On August 3, 2006, after Van Keuren had been released on bond, plaintiff entered into a residential services contract ("Agreement") to install a security system in Lee's home.  On September 22, 2006, Van Keuren broke into Lee's home again and shot and killed both Lee and Hawkinson.  Van Keuren allegedly carried out the murders after cutting the phone lines to the home, breaking a sliding glass door in the basement, and walking past two motion detectors.  The alarm system installed by plaintiff allegedly failed to go off until Lee's children heard gunshots and fled through the front door.

In June 2007, following extensive media coverage of these events, plaintiff filed this action for declaratory judgment against the Estates of Lee and Hawkinson.  In sum, plaintiff asks the Court to declare that its liability to the defendant estates of both Lee and Hawkinson is limited to $500.00, in accordance with a limited liability provision included in the Agreement.

Lee's estate ("estate defendant") filed an Amended Answer and Counterclaim asserting twelve causes of action against plaintiff.  The estate defendant seeks a declaration voiding the terms of the Agreement, and also alleges various fraud counterclaims, violations of Minnesota's consumer protection laws, and several breach of warranty counterclaims.[1]  In August 2007, the parties stipulated to the addition of two more defendants: (1) Vicki Seliger Swenson, in her capacity as trustee for Lee's next-of-kin ("trustee defendant"), and (2) Lee's minor children, through their co-guardians and co-conservators, Erik P. Swenson and Vicki Seliger Swenson ("minor defendants").  The trustee defendant then answered plaintiff's complaint by asserting sixteen counterclaims.  Those claims substantially mirror those alleged by the estate defendant, and also add counterclaims for negligence.

Plaintiff now brings this motion to dismiss 18 of the counterclaims brought by the estate defendant and the trustee defendant.[2]  The specific counterclaims challenged by plaintiff are set forth in detail below.  In summary, plaintiff argues: (1) defendants' fraud counterclaims were not pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure; (2) defendants' consumer protection counterclaims fail to seek a public benefit; (3) the trustee defendant's counterclaims alleging negligent training and

---

[1] Hawkinson's estate responded by filing a motion to dismiss, arguing that Hawkinson was not a signatory to the Agreement.  This Court denied that motion in a Memorandum Opinion and Order dated March 12, 2008.

[2] Specifically, ADT moves for the dismissal of Counts II, III, IV, V, VII, VIII, IX, X, XI, and XII of the estate defendant's counterclaim, and Counts VII, IX, XI, XII, XIII, XIV, XV, and XVI of the trustee defendant's counterclaim.  Plaintiff initially also moved to dismiss the trustee defendant's vicarious liability claim – Count VII – but withdrew this motion in its reply brief.

negligent supervision are not viable claims under Minnesota law; and (4) defendants failed to state a claim for a violation of the Magunson-Moss Warranty Act ("MMWA"). In its response brief, defendants stipulate to the dismissal of their MMWA claims and the trustee defendant's negligent training claim.  Accordingly, those claims are dismissed without prejudice,[3] and the Court turns to the remaining claims below.

## ANALYSIS

## I.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  In reviewing a complaint under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  A motion to dismiss should not be granted unless it appears beyond a doubt that the non-moving party can prove no set of facts that would entitle it to relief.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).  However, the non-moving party must provide "more than labels and

---

[3] The MMWA claims are alleged in count XII of the estate defendant's counterclaim and count XVI of the trustee defendant's counterclaim.  The negligent training claim is alleged as part of count VII of the trustee defendant's counterclaim.  Count VII of the trustee defendant's counterclaim also contains defendant's negligent supervision claim, which is addressed below.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  A plaintiff must state "a claim to relief that is plausible on its face."  *Id*. at 1974.

## II.     ESTATE DEFENDANT'S CLAIMS FOR COMMON LAW FRAUD

In counts II, III, and IV of its counterclaim, the estate defendant alleges common law fraud, misrepresentation by omission, and negligent misrepresentation.  In count II, the estate defendant points to alleged misrepresentations by plaintiff's Residential Sales Representative Ben Crickenberger and by "Plaintiff ADT, through its agents, employees, and representatives."  In the 19 paragraphs of allegations included under this count, the estate defendant contends (1) Crickenberger falsely represented that he had done a comprehensive analysis of Lee's security needs and had made appropriate recommendations; (2) Crickenberger falsely represented that Lee's alarm system would go off immediately if her telephone lines were cut or if someone broke into her home; (3) plaintiff's agents falsely represented that they had completed installation of a "state-of-the-art, comprehensive, effective, and reliable" alarm system; and (4) plaintiff's agents falsely represented that the alarm system had been installed in a workmanlike manner and in accordance with applicable industry standards and statutes.  The estate defendant alleges that these representations occurred "on or about" August 3, 2006 or "on or about" August 7, 2006, without specifying a location.  Plaintiff also alleges that the false representations induced Lee to purchase an alarm system.

In count III, the estate defendant alleges that "ADT" withheld a variety of "material" facts.   Those facts include the availability of alternative, more effective security systems, and "vulnerabilities and hidden defects" in her security system, including a 32-second delay between any intrusion and the activation of the alarm.   In one allegation, the estate defendant broadly states that plaintiff failed to disclose "the reasonably foreseeable dangers inherent in the proper use of the ADT alarm product."   In count IV, the estate defendant generally alleges that "[t]he aforementioned representations of material fact" constituted negligent misrepresentation.   The estate defendant alleges that the tortious conduct described in each of these three counts was a proximate cause of Lee's death.

Plaintiff contends that the estate defendant failed to plead these claims with the heightened particularity required under Federal Rule of Civil Procedure 9(b).   *See Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) (noting that Rule 9(b) applies to common law fraud claims brought under Minnesota law in federal court). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud or mistake."   To meet this heightened bar, the claimant "must plead such facts as the time, place, and contents of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."   *United States ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).   In short, "[t]he claim must identify who, what, where, when, and how."   *United States ex. rel. Costner v. United States*, 317 F.3d

883, 888 (8th Cir. 2003).  This heightened standard "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."  *Id*.

Plaintiff argues that each of the estate defendant's allegations is insufficient in several respects.  As to count II, plaintiff notes that the fraud allegations against unnamed defendants are insufficient under Rule 9(b).  *See Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 798-99 (E.D. Mich. 1993) (dismissing fraud allegations under Rule 9(b) where the claimant failed to identify the particular individual responsible).  While Crickenberger is specifically identified in some instances, plaintiff argues that those allegations are insufficient as well, because the estate defendant has failed to allege specific facts that would demonstrate reliance.  *Cf. Morse v. Abbot Labs.*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991) (dismissing claims for common law fraud and negligent misrepresentation where the claimant failed to allege specific facts that would demonstrate reliance).  As to count III, plaintiff argues the estate defendant has not provided a sufficiently specific explanation of the facts it was required to disclose.  Plaintiff adds that even if the identification of these facts were sufficient, the estate defendant has failed to allege circumstances demonstrating that plaintiff had a duty to disclose those facts.  *See Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976) ("Before nondisclosure may constitute fraud . . . there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him.").  Finally, as to count IV, plaintiff argues that the estate defendant's broad

incorporation of all of the earlier allegations in the complaint failed to provide sufficient notice under Rule 9(b).

The estate defendant provides no meaningful response to these arguments.  Rather, it merely recites the general requirements of Rule 9(b), and broadly contends that its allegations – "when viewed as a whole" – are sufficient.  In short, despite the high bar established by Rule 9(b) and several specific inadequacies targeted by plaintiff, the estate defendant has declined to specifically identify any allegations that are sufficient to go forward.  The estate defendant does, however, request an opportunity to re-plead any insufficient claims with greater particularity.  Plaintiff indicates that it has no objection to this request.  In light of the failure of the estate defendant to respond to plaintiff's arguments, the Court agrees that dismissal of these claims without prejudice is appropriate.

In re-pleading any fraud claims, the estate defendant must clearly set forth factual allegations sufficient to satisfy Rule 9(b).  In particular, for each distinct allegation of fraud the estate defendant must specify the individual or individuals who allegedly engaged in the fraudulent communications.  Allegations merely referring to "ADT" will be insufficient. *See Trooien v. Mansour*, No. 06-3197, 2007 WL 436068, at *3 (D. Minn. Feb. 7, 2007) (noting that allegations of fraud "must specify the identity of each defendant alleged to have engaged in fraudulent activity in order to satisfy the particularity requirement of Rule 9(b)").  In addition, the estate defendant must reasonably specify the time and place where each allegedly fraudulent act took place. While the Court cannot broadly state that "on or about" dates are insufficient, such

allegations must be supplemented with enough details to give plaintiff a reasonable opportunity to determine which conversations (or other specific communications) are at issue. *See Joshi*, 441 F.3d at 556 (requiring "such facts as the time [and] place").

Also, the estate defendant must specifically set forth the content of any allegedly false representations or fraudulently omitted facts. *Id.* While the Court is sympathetic to the challenges involved in reconstructing conversations involving a deceased party, this Court cannot allow a fraud claim to go forward without at least an allegation of specific, fraudulent statements or omissions. For example, general allegations that plaintiff failed to disclose "reasonably foreseeable dangers" of the alarm system will likely be insufficient. Finally, the estate defendant must support each distinct reliance claim with specific allegations concerning Lee's receipt of the misrepresentation or reliance on the omission. *See Morse*, 756 F. Supp. at 1112. In short, the estate defendant must satisfy the "who, what, where, when, and how" for each claim. *United States ex. rel. Costner*, 317 F.3d at 888. While some elements of this requirement were met by estate defendant in some instances – such as when the estate defendant specifically identified Crickenberger or when it specifically alleged a false statement concerning the 32-second alarm delay – only claims that can satisfy Rule 9(b) as a whole will be permitted to go forward.

In sum, the estate defendant's counterclaims for common law fraud – counts II, III, and IV of the estate defendant's counterclaim – are dismissed without prejudice. However, the Court grants the estate defendant leave to amend those claims to bring them

into conformity with the particularity requirements of Rule 9(b).  This amended pleading must be filed within 30 days.

## III.   MINNESOTA'S CONSUMER PROTECTION STATUTES

Defendants both bring numerous counterclaims under Minnesota's consumer protection statutes.   Specifically, defendants bring claims under (1) Minn. Stat. §§ 325G.06-.11, which governs home solicitation sales; (2) Minn. Stat. §§ 325G.17-20, which codifies Minnesota's implied warranties of merchantability and fitness for an intended purpose, and prohibits violations of express warranties; (3) Minn. Stat. §§ 325F.68-70, which prohibits unlawful and deceptive sales practices; (4) Minn. Stat. § 325F.67, which prohibits false statements in advertising; and (5) Minn. Stat. § 325D.13, which prohibits misrepresentations about the quality of marketed merchandise.[4]   The substance of these claims closely follows the substance of the fraud claims addressed above, and includes allegations of economic losses related to payments for the security system and arising out of Lee's death.

Defendants do not allege that Minnesota's consumer protection statutes afford them a private right of action.   They argue, however, that they should be allowed to enforce these provisions pursuant to Minnesota's Private Attorney General Statute.   *See* Minn. Stat. § 8.31, subd. 3a.   Under Minnesota law, "[t]he attorney general is provided

---

[4] These claims arise in counts IX, XI, XII, XIII, XIV, XV and XVI of the trustee defendant's counterclaim, and in counts V, VII, VIII, IX, X, XI, and XII of the estate defendant's counterclaim.  In many cases, these counts reference more than one of the statutes listed above. In the interest of clarity, when identifying defendants' claims, the Court will refer to them by statute rather than by count.

broad statutory authority under Minn. Stat. § 8.31 to investigate violations of law regarding unlawful business practices barred by a variety of statutory prohibitions . . . and to seek injunctive relief and civil penalties on behalf of the state." *Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000). In addition, "any person injured by a violation of any of the laws" committed to the enforcement authority of the attorney general "may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a. Such actions are only permissible, however, where claimants "demonstrate that their cause of action benefits the public." *Ly*, 615 N.W.2d at 314.

Plaintiff contends that the consumer protection claims brought by the defendants, as presently alleged, do not seek a public benefit. In support, plaintiff relies principally on two unpublished decisions in which this state law was interpreted in federal court: *Pecarina v. Tokai Corp.*, No. 01-1655, 2002 WL 1023153 (D. Minn. May 20, 2002), and *Overen v. Hasbro, Inc.*, No. 07-1430, 2007 WL 2695792 (D. Minn. Sept. 12, 2007). In *Pecarina*, the plaintiff suffered severe burns while using a lighter. Plaintiff filed suit against the manufacturer and retailer, seeking damages for past and future medical expenses, pain and suffering, wage loss, and emotional distress. Though plaintiff sought to proceed under several Minnesota consumer protection statutes, as here, the court concluded that "the essence of Plaintiff's lawsuit is personal injury," and that the private damages sought by the plaintiff did not benefit the public.

Similarly in *Overen*, another personal injury case, plaintiff merely sought money damages.   There again the court concluded that this private compensation was not sufficient to qualify as a "public benefit."   In both *Pecarina* and *Overen*, the court specifically noted that the plaintiff had either not sought meaningful injunctive relief, or not made a plausible case for how its action would be broadly beneficial. *Pecarina*, 2002 WL 1023153, at *5 (noting that plaintiff had sought an injunction preventing the sale of a product that had not been marketed in the United States for several years); *Overen*, 2007 WL 2695792, at *3 ("Notably, Plaintiff is not seeking any sort of injunctive relief that would alter the practices or actions of [defendant] such that it would serve a public benefit.").  Plaintiff contends that here as well, defendants merely seek compensation for Lee's estate and next-of-kin.

Moreover, plaintiff contends that under Minnesota's Wrongful Death Act, *see* Minn. Stat. § 573.02, the trustee defendant is prohibited from addressing this deficiency by seeking injunctive relief.   Plaintiff notes that the trustee defendant's authority is grounded in this statute, and that the Act expressly states that the "recovery" in such an action "shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death."   Minn. Stat. § 573.02, subd. 1.  Plaintiff contends that this limitation effectively restricts the trustee defendants from seeking any relief that would satisfy the "public benefit" requirement. *See Tuttle v. Lorillard Tobacco Co.*, No. 99-1550, 2003 WL 1571584, at *6-7 (D. Minn. Mar. 3, 2003) (suggesting this view of the Wrongful Death Act).  Similarly, plaintiff contends that any claim that the estate defendant may have had for injunctive relief

abated at Lee's death.  *Cf. Taylor v. Hennepin County*, No. C1-93-2369, 1994 WL 175010, at *2 (noting that a prisoner's claim for injunctive relief was mooted by his death).

Finally, again in the alternative, plaintiff contends that several of defendants' consumer protection claims lack sufficient particularity under Rule 9(b).  *See Tuttle v. Lorillard*, 119 F. Supp. 2d 954, 963 (D. Minn. 2000) (noting that Rule 9(b) applies to Minnesota's consumer protection statutes where "the gravamen of the complaint is fraud").  As to defendants' respective consumer fraud claims brought under Minn. Stat. §§ 325F.68-70 – count VIII of the estate defendant's counterclaim and count XII of the trustee defendant's counterclaim – plaintiff argues that both defendants rely on mere vague, conclusory assertions, without identifying the particular actors at fault, and without specifically identifying any fraudulent acts.  As to defendants' respective false advertisement claims brought under Minn. Stat. § 325F.67 – count IX of the estate defendant's counterclaim and count XIII of the trustee defendant's counterclaim – plaintiff notes that defendants have failed to identify any specific advertisements that they believe were false.  *See Russo*, 462 F. Supp. 2d at 1003 (dismissing a false advertisement claim where claimant failed to identify the allegedly false representation with particularity).  Finally, as to defendants' respective misrepresentation claims brought under Minn. Stat. § 325D.13 – count X of the estate defendant's counterclaim and count XIV of the trustee defendant's counterclaim – plaintiff argues that defendants again have failed to identify any specific misrepresentations.

In response, defendants first argue that they have indeed sought a sufficient public benefit.  For support, defendants point to *Collins v. Minnesota School of Business, Inc.*, 655 N.W.2d 320 (Minn. 2003).  There, 18 former students at the Minnesota School of Business ("MSB") alleged injuries caused by false, misleading, and confusing statements MSB had made about its sports medicine program.  Neither the Minnesota Court of Appeals nor the Minnesota Supreme Court indicated that the plaintiffs had sought injunctive relief.  Nonetheless, both courts concluded that plaintiffs had sought a sufficient "public benefit" for the purposes of the Private Attorney General Statute.  655 N.W.2d at 329-30 (emphasizing that the misrepresentations at issue had been made to the public at large); *Collins v. Minnesota School of Business, Inc.*, 636 N.W.2d 816, 820-21 (Minn. Ct. App. 2001).  The Minnesota Court of Appeals explained that the defendant had stopped the allegedly misleading advertisements in response to the lawsuit, and that "federal courts have consistently held that the prevention of false or misleading advertising is a public benefit."  636 N.W.2d at 820.  Defendants contend that here, too, they are seeking to stop misleading conduct and misleading advertising.

In the alternative, defendants argue that even if their damage claims are insufficient to meet the "public benefit" requirement, they have sought injunctive relief.  Defendants base this argument on two specific passages included in both counterclaims: (1) the statement that plaintiff's false advertisements "constitute an enjoinable public nuisance," and (2) the general request, in each defendant's prayer for relief, for "such other and further relief as the Court may deem just and equitable, *including any injunctive relief* and/or other equitable remedies the Court deems appropriate."

(Emphasis added).  Defendants argue that this relief is not foreclosed by the Wrongful Death Act, pointing to the Eighth Circuit's interpretation of that Act in *Steinlage v. Mayo Clinic Rochester*, 435 F.3d 913, 915 (8th Cir. 2006).  There, the Eighth Circuit considered Minnesota's Wrongful Death Act, and noted that the exclusivity language cited by plaintiff indicates that "the wrongful death trustee is not authorized to obtain a judgment for the benefit of general creditors who may have claims against the decedent's estate." *Id.*  Defendants argue that this was the *sole* purpose of the text cited by plaintiff, and that the Act does not otherwise restrict the range of relief available.

Finally, as to plaintiff's Rule 9(b) challenge, as with their common law fraud claims defendants fail to provide a meaningful response.  Defendants broadly contend that their claims have been pled with sufficient particularity, and request that if those claims are dismissed, the dismissal be without prejudice.

The Court agrees that defendants' claims, as currently pled, do not seek a sufficient public benefit under the Private Attorney General Statute.  The Court begins with the inadequacies under Rule 9(b).  As plaintiff points out, defendants' claims under the Consumer Fraud Act, Minn. Stat. § 325F.68-70, offer mere conclusory allegations, and mere wholesale reference to the rest of their counterclaims.  *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (noting that conclusory allegations are insufficient under Rule 9(b)).  As discussed above, the earlier counterclaims alleged by the estate defendant were deficient under Rule 9(b).  In addition, the estate defendant and trustee defendant's counterclaims were 64 and 69 pages, respectively.  Accordingly, this wholesale reference did not provide the notice and particularity required under Rule

9(b).  Similarly, defendants' counterclaims under the Minnesota False Advertising Act, Minn. Stat. § 325.67, fail to specify which advertisements allegedly contained false representations.   This basic information is indisputably necessary under Rule 9(b), rendering these counterclaims insufficient as well.   Finally, defendants' counterclaims under the Unlawful Trade Practices Act, Minn. Stat. § 325D.13, merely refer to misrepresentations "described in detail above."   Again, this method was inadequate to provide the notice required under Rule 9(b), particularly in light of the deficiencies of the estate defendant's common law claims.   Accordingly, the Court concludes that it is appropriate to dismiss these claims – counts VII, IX, and X of the estate defendant's counterclaim and counts XII, XIII, and XIV of the trustee defendant's counterclaim – without prejudice.

The inadequacies in these claims – and the substantial deficiencies in defendants' fraud allegations generally – are also a fatal blow to any "public benefit" argument that may be available to defendants under *Collins*.   The Court first notes that, in light of *Collins*, this Court is not persuaded that Minnesota's Private Attorney General Statute incorporates the bright-line rule suggested by plaintiff, requiring that equitable relief must be requested in order for a claimant to seek a "public benefit."   As discussed above, the Minnesota Supreme Court did not indicate that the plaintiffs in *Collins* had sought injunctive relief, but nonetheless determined that they had sought a public benefit.  The court simply observed that the plaintiffs had effectively ended a fraudulent marketing campaign.  This effect distinguishes the two cases relied on by plaintiff, where such an impact was unavailable.  *Pecarina*, 2002 WL 1023153, at *5 (noting that plaintiff had

sought an injunction preventing the sale of a product that had not been marketed in the United States for several years); *Overen*, 2007 WL 2695792, at *3 ("Notably, Plaintiff is not seeking any sort of injunctive relief that would alter the practices or actions of [defendant] such that it would serve a public benefit."); *see also Tuttle*, 2003 WL 1571584, at *6 ("To the extent that Plaintiff wants to warn the public of the dangers of smokeless tobacco, the FDA-required warnings already accomplish that purpose."); *Zutz v. Case Corp.*, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003) (analyzing a "public benefit" claim by considering whether a claim for private relief would have the impact discussed in *Collins*). Here – in a case involving a product that is marketed nationally and whose primary purpose is protecting consumers – it is at least conceivable that defendants could seek a public benefit at least as significant as that achieved in *Collins*. Thus, this Court does not treat the question of whether defendants have sought injunctive relief as dispositive.

In light of the inadequacies detailed above, however, the Court cannot conclude that defendants have sought such a benefit thus far. Defendants' broadly contend that their lawsuit "will soon effect a change in ADT's conduct and advertising." However, the deficiencies of defendants' fraud claims have left the Court without a clear identification of which particular acts and advertisements are at issue. That information is clearly necessary for the Court to determine what the public benefit would be if defendants were to prevail. Accordingly, defendants' consumer protection counterclaims that were not pled with sufficient particularity – as well as defendants' additional

consumer protection claims[5] – must be dismissed without prejudice on this ground as well.

In sum, defendants' consumer protection claims have failed to state claims for a public benefit pursuant to the Private Attorney General Statute. Defendants, however, are granted leave to amend their counterclaims to satisfy the particularity requirements of Rule 9(b) and to seek to set forth claims that seek a sufficient public benefit under *Collins*.

## IV.   NEGLIGENT SUPERVISION

Plaintiff seeks the dismissal of the trustee defendant's claim for negligent supervision.[6] Plaintiff argues that this tort requires an allegation that one of plaintiff's agents directly inflicted a physical injury, and that plaintiff knew or should have known that the offending employee was violent or aggressive. *See Johnson v. Peterson*, 734 N.W.2d 275, 278 (Minn. Ct. App. 2007). Plaintiff notes the actual physical injury involved in this case was inflicted by Van Keuren, and that no "violence or aggression"

---

[5] Plaintiff did not move for all of defendants' consumer protection claims to be dismissed for lack of particularity. Specifically, plaintiff failed to address counts V, VII, XI, and XII of the estate counterclaim and counts IX, XI, XV, and XVI of the trustee counterclaim. However, defendants have not contended that these claims – or any other specific claims – would seek the requisite public benefit alone in the absence of defendants' core fraud allegations. The Court agrees that without the claims addressed above, the Court cannot conclude that defendants have sought a sufficient public benefit. Accordingly, these additional claims are dismissed without prejudice as well, and leave is granted for defendants to re-plead them in its amended counterclaim. As to injunctive relief, this Court does not agree that the boilerplate language cited to by defendants is sufficient to rescue these claims. Thus, it is not necessary for the Court to reach the question of whether such relief would be permissible in light of Minnesota's Wrongful Death Statute.

[6] This claim is alleged as part of count VII of the trustee defendant's counterclaim.

on the part of its employees is at issue.   The trustee defendant disagrees with this characterization of Minnesota law, noting that this tort is "premised on an employer's duty to control employees and prevent them from intentionally *or negligently* inflicting personal injury."   *Id.* at 277.   While Van Keuren of course carried out Lee's murder, the trustee defendant alleges that a proximate cause of her death was the negligence of plaintiff's employees.

The Court agrees that the trustee defendant's allegations are insufficient to state a claim for negligent supervision under Minnesota law.   The *Johnson* case cited by the plaintiff was handed down by the Minnesota Court of Appeals less than one year ago, and plainly stated that this state law claim "*requires* that the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct."   734 N.W.2d at 278 (emphasis added).   There is no such allegation here. Accordingly, the trustee defendant's claim for negligent supervision is dismissed with prejudice.[7]

---

[7] This is not to say that there is no cause of action available against plaintiff if one of its employees negligently installed the security system.   The trustee defendant also alleges that plaintiff is liable under the doctrine of respondeat superior.   Under this doctrine, "an employer is vicariously liable for the torts of an employee committed within the course of employment." *Fahrendorff ex. rel. Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999). While plaintiff initially moved to dismiss this claim as well, this motion was later withdrawn.

## V.      LEAVE FOR THE MINOR DEFENDANTS TO AMEND

Finally, defendants request that the minor defendants be granted leave to amend their counterclaim to assert causes of action against ADT.  Plaintiff does not oppose this request.  Accordingly, defendants' request is granted.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's Amended Motion for Judgment on the Pleadings of Certain Claims [Docket No. 31] is **GRANTED** as follows:

1.      Estate Counterclaim counts V, VII, VIII, IX, X, XI, and XII and Trustee Counterclaim counts IX, XI, XII, XIII, XIV, XV, and XVI – defendants' counterclaims brought under Minnesota's consumer protection statutes – are **DISMISSED WITHOUT PREJUDICE**.

2.      Trustee Counterclaim count VII – defendant's claims for negligent training and negligent supervision – is **DISMISSED WITH PREJUDICE**.

3.      Estate Counterclaim count XII and Trustee Counterclaim count XVI – defendants' counterclaims brought under the Magnuson-Moss Warranty Act – are **DISMISSED WITHOUT PREJUDICE**.

4.      Estate Counterclaim counts II, III, and IV – estate defendant's common law fraud claims – are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that:

1.     Defendants' request for leave to amend their respective counterclaims is **GRANTED**.  Any amended counterclaims must be filed within 30 days from date of this order.

2.     Defendants' request for leave for the minor defendants to assert causes of action against plaintiff is **GRANTED**.  Such causes of action must be filed within 30 days from date of this order.


DATED:    July 21, 2008                                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                JOHN R. TUNHEIM
                                                                        United States District Judge