# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ADT SECURITY SERVICES, INC., | Civil No. 07-2983 (JRT/AJB) |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| VICKI SELIGER SWENSON, as Personal Representative of the Estate of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent; T.M.L., T.B.L., T.J.L., and T.M.L., minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson; | **MEMORANDUM OPINION AND ORDER** |
| Defendants/Counterclaimants. | |

Timothy R. Thornton and Molly M. Borg, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402-2157; Charles C. Eblen and J. Stan Sexton, **SHOOK, HARDY & BACON, LLP**, 2555 Grand Boulevard, Kansas City, MO 65108-2613; for plaintiff/counterclaim defendant.

Paul D. Peterson, Lori L. Barton, and William D. Harper, **HARPER & PETERSON, PLLC**, 3040 Woodbury Drive, Woodbury, MN 55129-9617; for defendants/counterclaimants Vicki Seliger Swenson, T.M.L., T.B.L., T.J.L., and T.M.L.

This case arises out of the murders of Terri Lynn Lee ("Lee") and Timothy J. Hawkinson, Sr. ("Hawkinson"), who were killed in a home that was armed with an allegedly faulty ADT security system. Following the murders, ADT filed this action against the estates of Lee and Hawkinson. ADT seeks a declaratory judgment that its liability is limited to a modest amount prescribed in the security system purchase

agreement. Lee's estate has alleged eleven counterclaims, a trustee proceeding on behalf of Lee's next-of-kin has alleged fourteen counterclaims, and Lee's children have alleged fifteen counterclaims. ADT now moves to dismiss thirty-seven of these forty counterclaims. ADT also brings a motion for summary judgment asking that the Court clarify that the jury will be allowed to apportion fault between ADT and Steven Van Keuren, the man convicted of Lee and Hawkinson's murders, and that ADT will not be jointly and severally liable for any damages corresponding to the fault attributed to Van Keuren. For the reasons set forth below, ADT's motion for judgment on the pleadings is granted in part and denied in part, and ADT's motion for summary judgment is denied.

## BACKGROUND

On July 29, 2006, Van Keuren, Lee's ex-boyfriend, assaulted Lee in her home in Lake Elmo, Minnesota. On August 3, 2006, after Van Keuren had been arrested, charged, and released on bond, Lee and her current boyfriend, Hawkinson, purchased an ADT security system to protect Lee's home. Defendants allege that Lee and Hawkinson informed ADT's sales representative that they were purchasing the security system in order to protect against any additional attacks by Van Keuren. Hawkinson, who often stayed at Lee's home, told the sales agent that he had a license to carry a handgun, and that his primary concern was having enough notice to prepare to use it. (Trustee Am. Answer, Docket No. 56, ¶ 49.)

On the day of the sale, the sales agent performed a walk-through at Lee's home. The agent agreed that exposed outside phone lines and sliding glass doors leading outside

from Lee's basement were vulnerabilities that could be exploited by an intruder. (*Id.*, ¶¶ 64, 68.) The agent allegedly indicated that with an ADT security system, if someone cut the exterior phone lines, an alarm would sound. (*Id.*, ¶¶ 73-74.) The agent also allegedly recommended a sensor that would sound an alarm if the sliding glass door was broken. (*Id.*, ¶ 65.) Finally, the sales representative recommended motion detectors that would sound an alarm if an intruder entered Lee's basement. (*Id.*, ¶ 67.) Defendants contend that Lee and Hawkinson accepted all of the agent's recommendations, without indicating they were limited to a specific budget or that they otherwise wished to forego any relevant enhancements to their security system. (*Id.*, ¶ 70.)

The security system was installed in Lee's home on August 7, 2006. Defendants allege that ADT's installer did not enable a feature in her security system that would have monitored the integrity of her telephone lines. (*Id.*, ¶¶ 103-04.) Defendants also allege that when the installer realized there were not enough glass-break detectors designated for Lee's basement, he used the available detectors for windows, and did not install a glass-break detector over the sliding glass doors. (*Id.*, at ¶ 123.) Finally, defendants allege that Lee and Hawkinson were not informed of additional motion-sensor options that would have made it possible to arm the sensors in the basement, but disarm the sensors on the floor of the home where they were sleeping. (*Id.*, ¶ 133.)

On September 22, 2006, Van Keuren broke into Lee's home again and shot and killed both Lee and Hawkinson. Van Keuren allegedly carried out the murders after cutting the phone lines to the home, breaking the sliding glass door in the basement, and walking past several basement motion detectors. The alarm system allegedly failed to go

off until two of Lee's children fled through the front door. All four of Lee's children were in the house at the time of the attack, and three of the children allegedly witnessed their mother's murder.

In June 2007, following extensive media coverage of these events, ADT filed this action for declaratory judgment against the estates of Lee and Hawkinson. In sum, ADT asks the Court to declare that its liability to the defendant estates is limited to $500, in accordance with a limited liability provision included in the alarm system purchase agreement.[1]

Lee's estate filed an Amended Answer and Counterclaim, asserting twelve causes of action against ADT. The estate sought a declaration voiding the terms of the Agreement, and also alleged various fraud claims, various violations of Minnesota's consumer protection laws, and several breach of warranty claims. In August 2007, the parties stipulated to the addition of two more defendants: (1) Vicki Swenson, in her capacity as trustee for Lee's next-of-kin ("trustee"), and (2) Lee's minor children, through their co-guardians and co-conservators, Erik Swenson and Vicki Swenson. The trustee defendant then filed an answer containing seventeen counterclaims. Those claims substantially mirrored those alleged by the estate defendant, and also added several claims for negligence.

ADT then filed a motion to dismiss ten of the estate's counterclaims and eight of the trustee's counterclaims. In summary, ADT argued that (1) these counterclaims failed

---

[1] ADT has since settled its action against Hawkinson's estate.

to meet the heightened pleading standards applicable to fraud claims, *see* Fed. R. Civ. P. Rule 9(b), and, in the alternative, that (2) defendants' consumer protection counterclaims failed to seek a public benefit sufficient to allow defendants to pursue those claims privately, *see* Minn. Stat. § 8.31, subd. 3a. The Court dismissed defendants' claims without prejudice, for failure to allege fraud with sufficient particularity. *ADT Sec. Servs., Inc. v. Swenson*, No. 07-2983, 2008 WL 2828867 (D. Minn. July 21, 2008). The Court also granted leave – without objection from ADT – for the Lee children to bring claims of their own.

The estate subsequently filed an amended answer containing eleven counterclaims, and the trustee and children filed an amended answer containing fourteen counterclaims brought on behalf of both the trustee and the children, and one counterclaim for negligent infliction of emotional distress brought solely by the children. Specifically, the estate alleges claims for (1) declaratory judgment (concluding that ADT's $500 limitation of liability clause is not enforceable); (2) common law fraud, arising out of ADT's allegedly misleading explanation of the features of Lee's security system; (3) misrepresentation by omission, arising out of ADT's alleged failure to inform Lee of vulnerabilities in her security system; (4) negligent misrepresentation, arising out of the factual basis for counts two and three; (5) violations of federal regulations and state laws mandating that sales of this nature include a "cooling off period" and that consumers be given notice of a specific time period when they can cancel the sale, *see* 16 C.F.R. § 429.1; Minn. Stat. § 325G.08; (6) breach of express warranties, arising out of ADT's failure to provide a security system that lived up to ADT's promises; (7) breach of implied warranties, arising

out of ADT's failure to provide an alarm system that satisfied the particular purpose for which it was purchased, *see* Minn. Stat. § 325G.18; (8) violations of Minnesota's consumer fraud act, arising out of the conduct that led Lee to purchase an inadequate security system, *see* Minn. Stat. §325F.69; (9) violations of Minnesota's false statements in advertising act, arising out of ADT's various inaccurate and inflated descriptions of its security system, *see* Minn. Stat. § 325F.67; (10) unlawful trade practices under Minnesota law, arising out of the conduct referenced above, *see* Minn. Stat. § 325D.13; and (11) breach of express limited warranty, for ADT's violations of the express written warranty provided to Lee in the security system's purchase agreement, *see* Minn. Stat. § 325G.19.

The trustee and children each allege claims for (1) negligence and negligence *per se*; (2) gross negligence; (3) negligent design; (4) strict liability (for alleged faults in the design of the security system); (5) negligent instruction and failure to warn; (6) strict liability (for alleged failures in ADT's sales and warning practices); and (7) vicarious liability. Counts eight through fourteen of the trustee and children's counterclaims essentially mirror counts five through eleven of the estate's counterclaims. The Lee children also allege a claim for negligent infliction of emotional distress.

For relief, defendants seek to recover the amounts that were paid for the security system and the amounts that were paid for ADT's ongoing monitoring services; damages arising out of Lee's death; damages caused directly to the children; and injunctive relief preventing ADT from engaging in similar fraudulent conduct in the future.

ADT has now brought a second motion to dismiss, challenging all of the estate's counterclaims, twelve of the fourteen counterclaims brought by the trustee, and fourteen of the fifteen counterclaims brought by the children. The various legal grounds for these challenges are set forth below.[2]

## ANALYSIS

## I.  STANDARD OF REVIEW

In reviewing a complaint under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must state "a claim to relief that is plausible on its face." *Id*. at 1974.

## II.  MINNESOTA'S WRONGFUL DEATH STATUTE

ADT first claims that all of the estate's claims must be dismissed because they abated upon Lee's death. Minnesota Statutes section 573.01 governs causes of action brought on behalf of deceased parties. That provision states:

> A cause of action arising out of injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02. All

---

[2] The Court notes that the estate, trustee, and children all now support their counterclaims with several hundred paragraphs of factual allegations, explaining the basis for their claims in great detail. ADT no longer challenges the sufficiency of these allegations under Rule 9(b).

other causes of action by one against another, whether arising in contract or not, survive to the personal representative of the former and against those of the latter.

Section 573.02 goes on to explain the availability of actions for wrongful death: "[w]hen death is caused by the wrongful act or omission of any person or corporation, the trustee . . . may maintain an action therefore if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission."  Under these provisions, it is clear that the only available legal action arising out of Lee's personal injuries is a wrongful death action brought by the trustee pursuant to section 573.02.  That provision is the basis for the involvement of Lee's trustee in this case, and entitles that trustee to seek damages resulting from Lee's death.

The more difficult question, however, is whether section 573.01 bars the claims brought by Lee's estate, which all raise challenges to ADT's conduct in the sale of its security system to Lee.  Dismissal of those claims would be compelled under the plain language of sections 573.01 and 573.02 if the estate's claims all "aris[e] out of injury to the person."  Put another way, the question for the Court is "Would [the estate's causes of action] have arisen had there been no injury to [Lee]?"  *Webber v. St. Paul City Ry. Co.*, 97 F. 140, 142 (8th Cir. 1899).  Although this is a close call, the Court concludes that the estate's claims are sufficiently distinct from the type of claims barred by section 573.01 to survive a motion to dismiss.

As explained above, it is apparent that Lee's estate cannot use its claims as a vehicle to seek damages arising out of Lee's death.  As the estate explains, however, its claims are not based on the injuries inflicted by Van Keuren, and do not seek

compensation for those injuries. Rather, the estate's claims allege, under various legal headings, that ADT perpetrated a fraud against Lee while Lee was still alive, by deceiving her about the qualities of her security system. In accordance with this theory, Lee's estate has clarified that it is merely seeking to recover her payments for the security system, rather than any damages arising out of Van Keuren's attack.

While the Court notes that these concessions essentially reduce the estate's 340-paragraph Answer and Counterclaim to an action seeking less than $3,000, (*see* Estate's Am. Answer, Docket No. 55, ¶ 90), the Court agrees that such claims technically survive to Lee's estate pursuant to section 573.01. In short, if ADT's alleged fraudulent sales and installation practices occurred, that fraud was manifest while Lee was still alive. In other words, if Van Keuren had entered Lee's home on the night of her murder and then left without injuring her – or if Lee had otherwise discovered the alleged faults in the security system before his intrusion – she may well have filed an action alleging the same claims (and seeking the same damages) now sought by the estate, without the presence of physical injuries of any kind. In short, in light of the seriousness of any possible improprieties in the sale of home security systems – particularly in the circumstances present here, where the decedent correctly perceived that she faced a grave, imminent threat – claims concerning the sale and installation alone plainly would have been significant enough to support a stand-alone lawsuit, wholly apart from Lee's death. Accordingly, Lee's various challenges to ADT's conduct in forming the sales contract properly survive to her estate pursuant to section 573.01. *See* Minn. Stat. § 573.01 (contemplating the survival of claims sounding in contract). Accordingly, ADT's motion

to dismiss is denied as to the estate's pursuit of the purchase price and monitoring fees paid by Lee for the allegedly faulty security system.[3]

## III.    INJUNCTIVE RELIEF

Both the trustee and the estate bring claims for injunctive relief, seeking to restrict ADT from engaging in similar conduct in the future.  The Court agrees with ADT that these requests must be dismissed.  The general rule is that this "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (explaining that a prisoner's claim for injunctive relief to improve prison conditions was moot where he was no longer subject to those conditions).  Here, the estate and trustee have brought claims in the name of Lee, who is now deceased, and cannot suffer any further harm from ADT's conduct in the sale and installation of its security systems.  Accordingly, ADT's motion is granted to the extent that it seeks to prevent the estate and trustee from seeking injunctive relief.

## IV.    MINNESOTA'S PRIVATE ATTORNEY GENERAL STATUTE

ADT next raises an argument that this Court dealt with at length in its prior Order.  ADT argues that neither the trustee nor the estate can assert claims under Minnesota's

---

[3] The Court adds that at the hearing, ADT suggested that Hawkinson paid these expenses. If that is indeed the case, then the estate's claims would appear to be moot.  This issue extends beyond the pleadings, however, and is not something this Court is free to take up in the context of a motion to dismiss.

consumer protection statutes because they have failed to seek relief that would provide a public benefit. *See Ly v. Nystrom*, 615 N.W.2d 302, 313 (Minn. 2000) (explaining that the private Attorney General Statute "applies only to those claimants who demonstrate that their cause of action benefits the public"). ADT notes that neither party can seek a public benefit by seeking injunctive relief, for the reasons given above. As to the trustee, ADT adds that Minnesota's wrongful death statute states that "[t]he recovery in [a wrongful death] action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the **exclusive** benefit of the surviving spouse and next of kin[.]" Minn. Stat. § 573.02, subd. 1 (emphasis added). ADT contends that this statute bars the trustee from bringing claims that could plausibly benefit the public.

As an initial matter, the Court explained in its prior Order that it does not agree that claimants must seek equitable relief in order to adequately seek a "public benefit" under the Minnesota Private Attorney General statute. *See Swenson*, No. 07-2983, 2008 WL 2828867, at *8 ("The Court first notes that . . . [it] is not persuaded that Minnesota's Private Attorney General Statute incorporates the bright-line rule suggested by [ADT], requiring that equitable relief must be requested in order for a claimant to seek a 'public benefit.'"); *see also Collins v. Minn. Sch. of Bus., Inc*., 655 N.W.2d 320, 329-30 (Minn. 2003) (concluding that plaintiffs had satisfied the public benefit requirement without

alleging injunctive relief). The Court need not repeat that reasoning here.[4] Accordingly, the Court concludes that the limitation on either the estate or trustee bringing requests for injunctive relief does not preclude either party from satisfying the public benefit requirement.

As to whether defendants' claims for private relief adequately seek a public benefit, the Court concludes that defendants have now included adequate allegations in their pleadings for their consumer protection claims to survive a motion to dismiss.[5] For example, both the estate and the trustee now allege that ADT provides its salespeople with instructions for how to respond to concerns about intruders cutting their phone lines.

---

[4] The Court merely adds that to the extent that *Tuttle v. Lorillard Tobacco Co.*, No. 99-1550, 2003 WL 1571584 (D. Minn. Mar. 3, 2003) – an unpublished decision from this district – suggests otherwise, it is distinguishable on its facts. In *Tuttle*, the court considered a wrongful death action brought on behalf of a deceased tobacco user, alleging that a tobacco company had failed to adequately warn its customers about the negative health effects likely to result from tobacco use. The court concluded that the action did not seek a sufficient public benefit for the plaintiff to invoke Minnesota's Private Attorney General statute. The court noted, however, that "[t]o the extent that Plaintiff wants to warn the public of the dangers of smokeless tobacco, the FDA-required warnings already accomplish that purpose." 2003 WL 1571584, at *6. In other words, the *Tuttle* lawsuit was not likely to change the manner in which tobacco is marketed, because the practices at issue in the lawsuit had already been corrected. Here, however, there are no concrete indications that the types of improper sales and installation practices alleged by defendants have stopped. Moreover, *Tuttle* was decided on summary judgment, after the parties and the Court had had an opportunity to evaluate the action's relationship to the public interest with reference to a full summary judgment record. Here, the Court addresses the public benefit requirement in the context of a motion to dismiss, without a full evidentiary record, and without an opportunity to fully evaluate any evidence bearing on the relationship between the events of this case and ADT's broader practices.

[5] The Court notes that ADT has not made any public benefit arguments that are specific to any particular consumer protection claims brought by defendants. Rather, ADT has merely argued that the claims as a whole fail to seek a public benefit, largely based on the legal arguments addressed above. Accordingly, the Court has taken this approach to assessing defendants' claims as well.

Those instructions allegedly advise salespeople to tell customers that if an intruder "goes around to the place where the phone line comes into the house and cuts the line . . . [a]t that point, your alarm will make a loud noise (assuming your system is armed)." (Estate's Am. Answer, Docket No. 55, ¶ 73; Trustee's Am. Answer, Docket No. 56, ¶ 73.) Both defendants allege that these general assurances were not reflected in ADT's actual approach to selling and installing security systems, as the telephone line monitoring feature was not included in Lee's system despite her interest in such a feature, and, even more significantly, despite her apparent belief that she had purchased such a feature. (*See* Trustee's Am. Answer, Docket No. 56, ¶ 153 (alleging that Lee told her sister that the "system would . . . produce a loud audible alarm if the telephone lines were cut").) The inclusion of this advice in ADT's internal sales manual suggests that the types of assurances received by Lee are received throughout the country. While the Court will be open to revisiting this issue at summary judgment if the evidence demonstrates that the improprieties here were isolated and unconnected to ADT's national sales and installation practices, the Court fails to see any basis for making that judgment under Rule 12.

In sum, in light of the Court's inability to conclusively assess the relationship between this action and ADT's general sales practices in the context of a motion to dismiss, as well as the fact that customers nationwide rely on ADT's security systems for protection, the Court finds that – at least for the purposes of a motion under Rule 12(b)(6) – defendants' litigation has sufficient potential to benefit the public to support invocation of the Private Attorney General statute. *See Collins v. Minn. Sch. of Bus., Inc.*, 636

N.W.2d 816, 820-21 (Minn. Ct. App. 2001), *aff'd*, 655 N.W.2d 320 (noting that "federal courts have consistently held that the prevention of false or misleading advertising is a public benefit," and permitting invocation of the Minnesota Private Attorney General statute without noting any request for injunctive relief); *see also Swenson*, 2008 WL 2828867, at *5-8. Accordingly, ADT's motion to dismiss is denied to the extent that it seeks to dismiss those claims.

## IV. NEGLIGENCE CLAIMS[6]

The trustee and children allege a claim for negligence *per se*. In certain circumstances under Minnesota law, the violation of a statute may constitute negligence per se. *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn. 1981). For this doctrine to apply, the statute's purpose must be (1) "to protect a class of persons which includes the one whose interest is invaded;" (2) "to protect the particular interest which is invaded;" (3) "to protect that interest against the kind of harm that has resulted;" and (4) "to protect that interest against the particular hazard from which the harm results." *Scott v. Indep. Sch. Dist. 709*, 256 N.W.2d 485, 488 (Minn. 1977) (internal quotation marks omitted).

ADT argues that this claim must be dismissed because defendants have failed to indicate which statute or regulation was violated. The trustee and the Lee children respond that the question of what was violated is a proper subject of expert testimony,

---

[6] ADT initially moved to dismiss the rest of the trustee's negligence claims as well, but withdrew this portion of its motion at the hearing.

and that they should be allowed to maintain this claim until they have had an opportunity to consult with an expert.

The Court agrees that the trustee and children's pleadings, in their current form, are inadequate. *See Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243-44 (D. Kan. 2002). In short, the requirement that a party plead the violated statute or rule in her complaint is not an onerous one, and the specifics of such a violation are reasonably within the grasp of lawyers unaided by experts. Accordingly, the trustee and children's claim for negligence per se is dismissed. The Court finds it appropriate, however, to allow the trustee and children an opportunity to amend this claim. While their complaint does not specify what statute or regulation they are relying on, they do point to several industry regulations in other sections of their complaint, and now suggest that these provisions are likely to form at least part of the basis for their claim. (*See* Trustee's Am. Answer, Docket No. 56, ¶¶ 108-16.) If the trustee and children wish to remedy this pleading deficiency, they must file an Amended Counterclaim within twenty days of the date of this Order. The Court reiterates that if the trustee and children wish to maintain this claim, this Amended Counterclaim must specifically state – with reference to specific, numbered provisions – which regulation or statute they are relying on.

## V.     CLAIMS BY LEE'S CHILDREN

ADT also argues that all of the claims alleged by Lee's children should be dismissed, with the exception of their claim for negligent infliction of emotional distress, because the children have failed to allege any damages. To the extent that ADT is liable

for damages arising out of Lee's death, ADT argues that these damages are properly sought by the trustee. The children reply that they – personally, and distinct from their mother – suffered damages from each and every one of the alleged claims, as a result of the trauma that they experienced on the night of Van Keuren's attack. As noted above, three of the four children allegedly witnessed the murders.

The Court agrees that while the children will of course have to ultimately prove any alleged damages with evidence, their allegations are sufficient to survive a motion to dismiss. While the Lee children have not separately enumerated their damages under every individual count, ADT is plainly on notice that for each of their claims, the children will argue that they were severely traumatized on the night of the murders, and suffered damages from that trauma. Accordingly, ADT's motion to dismiss is denied to the extent that it challenges the children's identification of their damages.[7]

## VI. ADT'S MOTION CONCERNING THE COMPARATIVE FAULT OF STEVE VAN KEUREN

ADT next asks the Court to clarify how damages would be presented to the jury. In short, ADT would like the Court to ask the jury to apportion fault between ADT and

---

[7] ADT also briefly argues that all of the children's claims except for their negligent infliction of emotional distress claim arise out Lee's death (or out of contractual or common law duties owed solely to Lee), and are therefore barred by the wrongful death statute. The Court, however, finds it improper to resolve this issue here. ADT initially sought a ruling in this motion on the nature and extent of any non-contractual duties it assumed in the course of its interactions with Lee's family. ADT conceded at the hearing, however, that this issue was best reserved until the parties had a full evidentiary record. Because the question of the nature of ADT's non-contractual duties is interwoven with the question of whether ADT may have assumed independent duties to Lee's children (who were allegedly known to ADT's employees), the Court finds that it is appropriate to reserve this issue for summary judgment as well.

Van Keuren, and wants assurances that it will not be jointly and severally liable for any fault (and consequent damages) assigned to Van Keuren. Defendants respond that Minnesota's comparative fault statute does not allow the liability of a negligent party to be reduced based on the fault of a party that committed an intentional tort. The parties agree that this question has not been settled by Minnesota's courts. *See also* Michael K. Steenson, *Joint and Several Liability in Minnesota: The 2003 Model*, 30 Wm. Mitchell L. Rev. 845, 878-81 (2004) (explaining that this issue has not been conclusively resolved).

As background, the Court notes that both parties' views are at least modestly plausible, and that both are able to point to states elsewhere that have adopted their view. Defendants' view would help ensure that tort victims fully recover for their losses. To the extent that a negligent party believes it shares the blame with a third party who committed an intentional tort, the burden would be on the negligent party to bring a claim against that third party for contribution. In other words, the risk that the third party is insolvent would be borne by the negligent party, instead of the victim. Defendants' view also may prevent the negligent party from unjustly minimizing its exposure, by preventing the jury from weighing the fault of a party that was merely negligent alongside the fault of a party that intentionally caused harm. *See, e.g.*, *Veazey v. Elmwood Plantation Assocs., Ltd.*, 650 So. 2d 712, 719 (La. 1994) (suggesting that "any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor").

ADT's position, on the other hand, would serve the general purposes of comparative fault statutes, by helping ensure that a party's liability is no greater than its

fault. It also would eliminate the odd possibility that a party could invoke the comparative fault statute if the third-party tortfeasor is negligent, but not if the third party did something wrong intentionally. *See* Steenson, 30 Wm. Mitchell L. Rev. at 878 (noting the policy argument that a defendant should be no worse off when a co-defendant has committed an intentional tort than when a co-defendant has been negligent); *see also Rodenburg v. Fargo-Moorhead Y.M.C.A.*, 632 N.W.2d 407, 416-18 (N.D. 2001) (interpreting a North Dakota statute to require the adoption of the view advanced by ADT). On ADT's view, the risk of insolvency of the third party would be borne by the tort victim.

While both parties point to specific Minnesota statutory provisions that support their respective views, the Court agrees that these provisions imply different results, and thus – when read alongside one another – do not resolve this issue. ADT relies heavily on section 604.02, which includes a specific provision on joint liability. That provision, as revised in 2003, states:

> When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following persons are jointly and severally liable for the whole award:
>
> (1)  a person whose fault is greater than 50 percent;
>
> (2)  two or more persons who act in a common scheme or plan that results in injury; [or]
>
> (3)  a person who commits an intentional tort.

ADT argues that by mentioning intentional torts, this provision clearly implies that such torts can be considered as part of a comparative fault analysis. ADT argues that while the

provision clearly indicates that the **intentional tortfeasor** cannot defray any of his liability onto another tortfeasor, the provision does not prevent the negligent party from defraying liability **onto** the intentional tortfeasor. On this view, the only way that ADT could be liable for the entire award would be if their fault was greater than 50%, or if Van Keuren and ADT were a part of the same scheme or plan.

Defendants, on the other hand, rely on section 604.01, subd. 1a, which expressly defines "fault." That provision states:

> "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk, misuse of a product and unreasonable failure to avoid an injury or to mitigate damages, and the defense of complicity under section 340A.801.

In short, this definition does not mention intentional torts. *See* Steenson, 30 Wm. Mitchell L. Rev. at 879-80 (explaining that in order to reach the position advanced by ADT, "[t]he language of the definition of 'fault' . . . would have to be ignored"). This omission is consistent with the view that intentional torts are simply out of the equation for comparative fault purposes.

Ultimately, however, the Court need not resolve whether Minnesota law generally permits the application of the comparative fault statute – and, in turn, permits a substantial reduction in the exposure of negligent tortfeasors – in cases involving intentional torts. Even if ADT is correct about that general proposition, the Court finds that on the specific facts alleged here, it cannot yet conclude as a matter of law that ADT would not be jointly and severally liable for the harm caused by Van Keuren.

While the Court does not believe that Minnesota's statutes resolve this question, it does not believe that it is writing on an entirely clean slate. The Restatement (Third) of Torts – a source frequently relied on by Minnesota's courts in other contexts, *see Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 387 (Minn. Ct. App. 2004) ("Since its publication, we have relied on Restatement (Third) of Torts when considering the law of products liability.") – specifically provides:

> A person who is liable to another based on a failure to protect the other from the specific risk of an intentional tort is jointly and severally liable for the share of comparative responsibility assigned to the intentional tortfeasor in addition to the share of comparative responsibility assigned to the person.

Restatement (Third) of Torts: Apportionment of Liability § 14. On this view, even if there are cases where a negligent tortfeasor is able to defray some of its liability onto intentional tortfeasors through the comparative fault statute, the negligent tortfeasor remains jointly and severally liable in cases where it was responsible for protecting against the specific type of intentional conduct that ultimately occurred. In light of the lack of specific guidance from Minnesota's statutes on this issue, the Court concludes that Minnesota's state courts would most likely follow this specific guidance from a source frequently treated as authoritative under Minnesota law.

The Court adds that the facts of this case underscore the relevance and fairness of this approach. The core of defendants' claims against ADT is that ADT promised to provide a security system that would provide certain protections against intruders, and failed to do so. Defendants allege that as a direct consequence of these failures, Lee was

left vulnerable to Van Keuren's attack.[8]  In those circumstances, allowing ADT to invoke comparative fault may well be to allow ADT to shirk the precise duty that it assumed, and possibly escape liability altogether, as many juries asked to determine who was comparatively more responsible for Lee's death – an allegedly negligent security company or the person who actually pulled the trigger – would likely lean overwhelmingly toward Van Keuren.  *Cf. Veazey*, 650 So.2d at 719.  In those circumstances, the Court concludes that it is likely that Minnesota would adopt the view advanced in the Restatement, and would prevent ADT from limiting its exposure to liability to the extent of its fault.  Accordingly, ADT's motion for summary judgment as to the comparative fault of Van Keuren is denied.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     ADT's Amended Motion for Judgment on the Pleadings of Certain Claims [Docket No. 58] is **GRANTED in part** and **DENIED in part** as follows:

a.     The motion is **GRANTED** as to the estate and trustee's requests for injunctive relief.  Those requests are **DISMISSED**.

b.     The motion is **DENIED** as to the estate's efforts to recover the purchase price and monitoring fees paid to ADT by Lee.

---

[8] Defendants add in their pleadings that Hawkinson had a license to carry a handgun, and had one within arm's reach at the time of the murders.  In other words, it is not inconceivable that the sounding of an alarm could have changed the tragic results of Van Keuren's attack.

c.     The motion is **DENIED** to the extent that it seeks dismissal of defendants' claims under Minnesota's Private Attorney General statute.

d.     The motion is **GRANTED** as to the trustee's claim for negligence *per se*.  That claim is **DISMISSED without prejudice**.  Any amendment to this claim must be filed within twenty days of the date of this Order.

e.     The motion is **DENIED** to the extent that it seeks dismissal of the claims brought by Lee's children.

2.     ADT's Motion for Summary Judgment on the Comparative Fault of Steve Van Keuren [Docket No. 62] is **DENIED**.

DATED:   September 28, 2009
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge