# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CIVIL NO. 07-2983 (JRT/AJB)

ADT SECURITY SERVICES, INC.,

      PLAINTIFF/COUNTERCLAIM DEFENDANT,

**ORDER OPINION**

V.

VICKI SELIGER SWENSON, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF TERI LYNN LEE
AND AS TRUSTEE FOR THE NEXT-OF-KIN OF TERI LYNN
LEE, DECEDENT; T.M.L., T.B.L., T.J.L., AND T.M.L.,
MINORS, THROUGH THEIR CO-GUARDIANS AND CO-
CONSERVATORS, ERIK P. SWENSON AND VICKI SELIGER
SWENSON,

      DEFENDANTS/COUNTERCLAIM PLAINTIFFS.

---

Charles C. Eblen (pro hac vice) and J. Stan Sexton (pro hac vice), Shook, Hardy & Bacon, LLP, 2555 Grand Boulevard, Kansas City, MO 65108-2613;

Timothy R. Thornton and Molly M. Borg, Briggs & Morgan, PA, 80 S 8th Street, Suite 2200, Minneapolis, MN 55402, for Plaintiff/Counterclaim Defendant; and

Lori L. Barton, William D. Harper, and Paul D. Peterson, Harper & Peterson, PLLC, 3040 Woodbury Drive, Woodbury, MN 55129-9617 for Defendants/Counterclaim Plaintiffs.

---

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Defendants/Counterclaimants' Motion to Compel Production of Documents, Including Those Withheld on Grounds of Privilege, and to Compel ADT to Pay for the Reasonable Deposition Preparation Time of Swensons' Experts [Docket No. 152]; and Plaintiff/Counterclaim Defendant ADT Security Services, Inc.'s Motion for Leave to Correct Gene Bomgardner's Deposition Testimony Pursuant to Fed. R. Civ. P. 30(e) Out of Time [Docket No. 146]. A hearing was held

1

on the motions on December 23, 2009. At the hearing the parties also stated that they are awaiting this Court's ruling on Swenson's spoliation contention.[1]

For the reasons set forth below, **IT IS HEREBY ORDERED** Defendants/Counterclaimants' Motion to Compel Production of Documents, Including Those Withheld on Grounds of Privilege, and to Compel ADT to Pay for the Reasonable Deposition Preparation Time of Swensons' Experts [Docket No. 152] is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART;** Plaintiff/Counterclaim Defendant ADT Security Services, Inc.'s Motion for Leave to Correct Gene Bomgardner's Deposition Testimony Pursuant to Fed. R. Civ. P. 30(e) Out of Time [Docket No. 146] is **GRANTED;** and this Court declines to issue an advisory opinion on the issue of spoliation.

## 1. *Swenson's Motion to Compel* [Docket No. 152]

Swenson's moves this Court for an order compelling ADT to produce documents withheld on ground of privilege and documents related to ADT's underwriters' annual audit report. (Swenson's Mem. 1, Dec. 1, 2009.) Swenson also moves this Court for an order compelling ADT to pay for reasonable deposition preparation time of Swenson's expert. (*Id.*) At the hearing, the parties informed the Court that they resolved the expert-witness issue. Therefore, to the extent the motion concerns compensation for deposition preparation time for Swenson's experts, Defendant/Counterclaim Plaintiff's motion is denied as moot. By the time of the hearing, the parties had also resolved their dispute as to Document Nos.[2] 22, 24, 45, 67, 81, and 82. Therefore, to the extent that the motion concerns Document Nos. 22, 24, 45, 67, 81, and 82, the motion is denied as moot.

---

[1] There is no pending motion on this issue. This issue is discussed in the last section of this Order.

[2] This Order uses the designation "Document No." in reference to designations on ADT's privilege log.

This Court ordered ADT on the record to submit the remaining contested documents on its privilege log to the Court for *in camera* review. ADT was permitted to submit a brief supplemental memorandum explaining the basis of its asserted privilege. This Court is left to review documents numbered 1 through 21, 23, 25 through 44, 46 through 66, 68 through 80, and 83 through 111.

## Standard of Review

District courts have broad discretion to limit discovery and decide discovery motions. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993). Fed. R. Civ. P. 26(b)(1) states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Information that is otherwise discoverable can be withheld if it is "privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5); *see also id.* at 26(b)(3).

In this case, attorney-client privilege, asserted to protect documents from disclosure, is determined in accordance with Minnesota law. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). The attorney-client privilege attaches to corporations as well as to individuals. *Kahl v. Minnesota Wood Specialty, Inc.*, 277 N.W.2d 395, 397 (Minn. 1979). "[T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence." *Kobluk v. University of Minnesota,* 574 N.W.2d 436, 440 (Minn. 1998). Minnesota employs the following definition of attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* at 440 (citing 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev.1961)). Minnesota has not adopted a distinct test for corporations. *Leer v. Chicago, M., St. P. & P. Ry. Co.,* 308 N.W.2d 305, 309 (Minn.1981); *see also In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (noting that the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 396-97, 101 S. Ct. 677, 686 (1981), declined to adopt a test in favor of a case-by-case analysis)**.**

Further, communications with an attorney about business decisions do not fall within the protection of attorney client privilege.

> [T]he attorney-client privilege does not protect client communications that relate only business or technical data. Just as the minutes of business meetings attended by attorneys are not automatically privileged . . . business documents sent to corporate officers and employees, as well as the corporation's attorneys, do not become privileged automatically. . . . Client communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon.

*Simon*, 816 F.2d at 403-04 (interpreting Minnesota law) (citations and quotation omitted).

The work-product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Simon*, 816 F.2d at 400. Rule 26(b)(3) generally precludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," but permits discovery if the documents and tangible things "are otherwise discoverable under Rule 26(b)(1) . . . and . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

> "[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained

> because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."

*Simon*, 816 F.2d at 401 (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198-99 (1970)).

### Discussion

*Underwriter Laboratories Inc.'s Annual Report.* ADT produced an Underwriter Laboratories Inc. report that references noncompliance issues. Swenson is seeking production of documents pertaining to these noncompliance issues. This Court concludes that the documents that Swenson is seeking are not discoverable under Fed. R. Civ. P. 26(b)(1). The report pertains to New Jersey commercial security accounts that include guard service. Any compliance issues are not relevant to this case, which involves a residential security account in Minnesota with no guard service option. This conclusion is consistent with this Court's April 6, 2009 Order, limiting interrogatories to residential customers' complaints. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to the Underwriter Laboratories Inc. report is denied.

*Serious Incident Report.* This Court concludes that Document No. 1 constitutes work product. Document No. 1 is the Serious Incident Report (SIR) from the incident. "The SIR is a report specially mandated by ADT's general counsel and is undertaken in events which lead the company and its management to conclude that the company may be subject to litigation for the events described therein." (J. Stan Sexton Aff. Dec. 16, 2009.) Moreover, Swenson has made no showing of substantial need for the materials nor could they have made this showing given that "[t]here are no 'facts' on this reporting form that are not known to" Swenson. (ADT's Privilege Log, Dec. 16, 2009.) Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document No. 1 is denied.

***Talking Points.*** This Court concludes that Document Nos. 2, 3, and 30 through 44 are not subject to attorney-client privilege and do not constitute work product. These documents concern "talking points"[3] created by ADT's legal department and ADT management for use by ADT employees and email communications regarding the talking points. "Talking points" created by counsel represent a unique mixture of legal considerations and business advice. "Talking points" also create a further issue because they are inherently meant to be shared, which traditionally waives claims of privilege. For example, in the present case, the talking points state that ADT employees are directed to use the talking points with customers and prospects.

This Court concludes that, under the specific facts of this case, ADT's legal department was acting primarily as a business or public relations advisor when it drafted the talking points. *See New York Times Co. v. U.S. Department of Defense*, 499 F. Supp.2d 501, 517 (S.D.N.Y. 2007) (concluding that "talking points" were not attorney work product because they "seem to have been drafted for public relations purposes"). Advertising, responding to media inquiries, and engaging in other public relations efforts are traditional business functions. The talking points in the present case were drafted following an episode of the television program *Inside Edition* and directly responded to the contents of that program. While ADT's legal department was no doubt mindful of the pending litigation when it was drafting these documents, the purpose of writing the talking points was to support ADT's public relations efforts and respond to what ADT perceived to be negative publicity. *Cf. Teena-Ann V. Sankoorikal & Kathleen H. McDermott*, *Attorney-client Privilege and Work-Product Doctrine: Potential Pitfalls of Disclosure to Public Relations Firms*, 786 Practicing L. Inst. 271, 286 (2008) ("If a document

---

[3] "Talking point" is defined as "a point, fact, or development that lends support for an argument . . . " or "a feature or argument of use in selling." *Webster's Third New International Dictionary* 2334 (1993). The phrase "talking point" is typically used to describe a prepared statement, often for use during an interaction with the media as in the present case.

created by or shared with a public relations firm, while relating to the pending litigation, was not prepared in anticipation of the litigation itself—i.e., it was prepared in anticipation of a potential media battle, instead of a courtroom battle—a court may find that no privilege exists.").

Nevertheless, the documents contain some statements that are solely legal advice. Thus, this Court concludes that disclosure of redacted copies is warranted. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Documents Nos. 2 and 3, and 30 through 44 is granted. This Court orders that ADT must product Documents Nos. 2 and 3, and 30 through 44. In Document No. 2 (ADT-017846), ADT may redact Gregg Ramsey's statement following the word "and" to the period. In Document Nos. 3, 31, 34, 35, 37, 40, 42, and 44 ADT may redact the sentence in the first paragraph starting with "Please," the sentence beginning with "Both cases…", and the second (2) of the "Manager's Action Steps" or "Managers [sic] Action Steps."[4]

*Media Coverage*. This Court concludes that Document Nos. 71, 72,[5] 79, 83, 84, 86, 88, 89, 90, 105, 106, 107, and 111 are not subject to attorney-client privilege and do not constitute work product. These documents represent communications concerning media coverage of ADT. The documents do not seek legal advice, despite the fact that attorneys are copied on the emails. Rather the entire tenor of the documents is to craft a response for a news report concerning ADT. Where the legal team is the author of the documents, they are acting in a public relations capacity. *See supra Talking Points*. In some instances the communications are merely forwarding articles and media inquiries to the legal department. *See Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577 (1976) (holding that the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent

---

[4] Not all of these documents contain these sections.
[5] Document No. 72 has an attachment that does not appear to have been included in the privilege log.

the privilege"). This Court concludes that Document Nos. 80 and 87 are subject to attorney-client privilege. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 71, 72, 79, 83, 84, 86, 88, 89, 90, 105, 106, 107, and 111 is granted and as it pertains to Document Nos. 80 and 87 is denied.

**Hold Record Notices.** This Court concludes that Document Nos. 4, 5, 6, and 108 are subject to attorney-client privilege and constitute work product. They represent conversations from counsel to ADT instructing employees to hold records related to this litigation. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 4, 5, 6, and 108 is denied.

**Document Nos. 7-12, 46-66.** This Court concludes that Document Nos. 7 through 12 and 46 through 66 constitute work product. These documents represent replies, comments, and discussion requested by an attorney for ADT. *See Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). It is apparent that the documents were prepared in the midst of litigation involving ADT. Moreover, Swenson has made no showing of substantial need for the materials to prepare its case. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 7 through 12 and 46 through 66 is denied.

**Document Nos. 13-17.** This Court concludes that Document Nos. 13 through 17 are not privileged or subject to work-product protection. The attorney-client privilege and work-product doctrine "do not protect disclosure of the underlying facts." *Upjohn*, 449 U.S. at 395, 101 S.Ct. at 685; *Hickman*, 329 U.S. at 507, 67 S.Ct. at 392. These documents represent underlying facts. They do not include any attorney's notes. While ADT contends that they are irrelevant, this Court concludes that the documents "appear[] reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1). Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 13 through 17 is granted.

*Meet & Confer Requests.* This Court concludes that Document Nos. 18, 19, 20, 21, 23, 68, 69, and 70 are subject to the attorney-client privilege and constitute work product. The documents outline topics that ADT employees wish to discuss with their attorneys and they include the attorney's thoughts concerning the present case and instructions to ADT employees. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 18, 19, 20, 21, 23, 68, 69, and 70 is denied.

*Unrelated Litigation.* This Court concludes that Document Nos. 25, 26, 29, and 110 are subject to the attorney-client privilege and constitute work product. They represent communications between ADT employees and another law firm, and the communications relate to separate litigations. But, Document Nos. 27 and 28 represent underlying facts, and as such, are discoverable. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 25, 26, and 29 is denied, but the motion as it pertains to Document Nos. 27 and 28 is granted.

*Super Bowl Rings Burglary.* This Court concludes that Document Nos. 73, 74, and 75 are subject to attorney-client privilege and constitute work product. These documents concern communications between ADT employees and counsel regarding a burglary in which Super Bowl rings were stolen. While Document Nos. 76, 77, and 78—which are the event history reports from the Super Bowl rings burglary—do not appear to constitute work product or information subject to attorney-client privilege, this Court concludes that they are not relevant and therefore, are not discoverable under Fed. R. Civ. P. 26(b)(1). Therefore,

Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 73 through 78 is denied.

**IP Connectivity Investigation.** This Court concludes that Document Nos. 91 through 104 and 109 are not subject to attorney-client privilege and do not constitute work product. Defendant contends that these documents relate "to an investigation undertaken by . . . ADT's General counsel, relating to IP connectivity issues including voltage drop issues attendant to the *Swenson* case and other possible litigation." But, ADT bears the burden of establishing the elements of work product immunity. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997). While the issues discussed in Document Nos. 91 through 104 and 109 bear some relation to issues within the present case, this Court concludes that ADT has not met its burden of showing that these emails were prepared in anticipation of litigation or that they represent any request for legal advice. Rather, these emails appear to be concerned with the future actions of another company and how those actions will impact ADT's ability to provide its core services. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 91 through 104 and 109 is granted.

**Document No. 85.** This Court concludes that Document No. 85 is attorney-client privilege. This document represents a communication between ADT employees concerning legal advice. Therefore, Defendant/Counterclaim Plaintiff's motion as it pertains to Document No. 85 is denied

**2. *ADT's Motion to Correct Bomgardner' Deposition Testimony* [Docket No. 146]**

Terri Lynn Lee (Lee) and Timothy J. Hawkinson, Sr., (Hawkinson) were killed in their home by Steven Van Keuren (Van Keuren) during the early morning hours of September 21, 2006. *See State v. Van Keuren*, 759 N.W.2d 36, 38 (Minn. 2008) (describing facts in the criminal proceeding); *see generally* (Order, Sept. 28, 2009) (discussing factual background within the context of ADT's motion to dismiss). According to Van Keuren's testimony in his criminal case, on the night Lee and Hawkinson died, he "parked in a neighbor's driveway, cut Lee's telephone and cable lines, and . . . entered Lee's house by breaking the glass in the basement door with a crowbar." *Van Keuren*, 759 N.W.2d at 38. "Once inside, Van Keuren crept upstairs to the master bedroom where he found Hawkinson, [and] Lee . . . sleeping." *Id.* "The medical examiner testified that both Lee and Hawkinson died of multiple gunshot wounds, Hawkinson having been shot three times and Lee six times. In 2007, a jury found Van Keuren guilty of two counts of first-degree murder . . . ." *Id.* at 39. At the time she was killed, Lee had an ADT Security Services' (ADT) security system installed within her home. (Complaint ¶ 1, June 21, 2007.)

On September 22, 2006, ADT employee Gene Bomgardner was summoned to the Lee residence at the request of the Washington County Police Department.  He was dispatched from ADT's National Service Center. Following his visit to the Lee residence, Bomgardner provided a telephonic report to the National Dispatch Center operator for entry into the computer system that documents service calls and billing events.

Gene Bomgardner was deposed on September 22, 2008. During his deposition, Bomgardner testified that he wrote a service ticket following his visit to Lee's residence on September 22, 2006. Bomgardner believed his testimony to be accurate and, pursuant to Fed. R. Civ. P. 30(e), Bomgardner signed and returned the signature page of the transcript approximately

three weeks later. ADT was unable to locate Bomgardner's service ticket and whether a service ticket was ever created is disputed by the parties. *See infra 3. Spoliation.* In July of 2009, ADT's counsel located the recording of Bomgardner's telephonic report at the National Dispatch Center.[6] After listening to his telephonic report, Bomgardner concluded "beyond any doubt that [his] deposition testimony [in which he stated he created a service ticket] is simply inaccurate and was likely based solely on [his] custom, habit, and practice of completing service tickets at [a] job's conclusion." (Bomgardner Aff. ¶ 4, Nov. 30, 2009.) ADT now moves under Fed. R. Civ. P. 6(b) and 30(e) to correct Bomgardner's deposition testimony.[7]

Fed. R. Civ. P. 30(e)(1)(B) permits deponents to make "change in form or substance" to their deposition testimony within 30 days after being notified that the deposition transcript is available. There are divergent interpretations of Fed. R. Civ. P. 30(e). *See Wigg v. Sioux Falls School Dist. 49-5*, 274 F.Supp.2d 1084, 1090-91 (D.S.D. 2003) (discussing the divergent interpretations of Fed. R. Civ. P. 30(e)), *aff'd in part and rev. in part on other grounds by* 382 F.3d 807 (8th Cir. 2004); *see generally* Christopher Macchiaroli & Danielle Tarin*, Rewriting the Record: A Federal Court Split on the Scope of Permissible Changes to a Deposition Transcript*, 3 Fed. Cts. L. Rev. 1 (2009). The differing interpretations concern the phrase "change in form or substance." Some courts follow the reasoning of *Greenway v. International Paper Co.*, in which the court stated:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent

---

[6] This recording was not located and produced earlier because counsel mistakenly believed that all audio recordings were maintained by the central monitoring center. Therefore, the document retention notices were sent to ADT's central monitoring station, but not to ADT's National Dispatch Center.

[7] The specific proposed changes are contained in Gene Bomgardner's affidavit, dated November 30, 2009.

> would be in order. The Rule cannot be interpreted to allow one to
> alter what was said under oath. If that were the case, one could
> merely answer the questions with no thought at all then return home
> and plan artful responses. Depositions differ from interrogatories in
> that regard. A deposition is not a take home examination.

144 F.R.D. 322, 325 (W.D. La. 1992). Other courts follow the reasoning in *Lugtig v. Thomas*, in

which the court stated:

> Rule 30(e) of the Federal Rules of Civil Procedure allows
> deponents to make "(a)ny changes in form or substance which the
> witness desires . . . ," even if the changes contradict the original
> answers or even if the deponent's reasons for making the changes
> are unconvincing. The language of the Rule places no limitations on
> the type of changes that may be made by a witness before signing
> his deposition. . . . [T]he Rule [does not] require a judge to examine
> the sufficiency, reasonableness, or legitimacy of the reasons for the
> changes. Allowing a witness to change his deposition before trial
> eliminates the likelihood of deviations from the original deposition
> in his testimony at trial; reducing surprises at the trial through the
> use of Rule 30(e) is an efficient procedure.

89 F.R.D. 639, 641 (D.C. Ill., 1981) (citations omitted). The Eighth Circuit Court of Appeals has

yet to consider the issue.

Both interpretations have merit. But it would serve no utility to restate the thorough

analyses that have already been written for this issue. *See generally Reilly v. TXU Corp.*, 230

F.R.D. 486 (N.D. Tex. 2005); *Innovative Marketing & Technology, L.L.C. v. Norm Thompson

Outfitters, Inc.*, 171 F.R.D. 203 (W.D. Tex. 1997). After considering the relative merits of both

positions, this Court adopts the reasoning of *Lugtig v. Thomas* and concludes that ADT's

proposed amendments are permitted under Rule 30(e). This Court concludes that any concerns

related to this interpretation can be assuaged by the fact that

> [t]he original answer to the deposition questions will remain part
> of the record and can be read at the trial. Nothing in the language
> of Rule 30(e) requires or implies that the original answers are to be
> stricken when changes are made. In fact, the Rule's instruction that

> the changes be made "upon the deposition" implies that the
> original answers will remain. Policy also supports that conclusion.

*Lugtig*, 89 F.R.D. at 641-42; *see also Holland v. Cedar Creek Min., Inc.*, 198 F.R.D. 651, 653

(S.D.W. Va. 2001). Thus, to the extent permitted by the trial court, Swenson is free to question

Bomgardner concerning both his original statement as well as his amended statement.

Because ADT moves to correct his deposition beyond the 30 days provided by Rule 30(e)

(and over one year after Bomgardner signed and returned his deposition transcript), this Court

must consider ADT's motion within the context of Fed. R. Civ. P. 6. Rule 6 provides in relevant

part that "[w]hen an act may or must be done within a specified time, the court may, for good

cause, extend the time . . . on motion made after the time has expired if the party failed to act

because of excusable neglect."[8] Fed. R. Civ. P. 6(b)(1)(B).

This Court concludes that ADT has met its burden of showing excusable neglect. There

is no danger of prejudice to Swenson. And the delay in amending the deposition transcript has

no impact on these proceedings. Whether Bomgardner's telephonic report was in ADT's

possession at the time of Bomgardner's testimony and whether he actually created a service

ticket is irrelevant for the purposes of the present motion because only Bomgardner's memory is

at issue.[9] Bomgardner testified based upon his memory at the deposition. Following the

deposition he reviewed evidence that refreshed his recollection. ADT has made a good faith

showing that Bomgardner's acted in good faith. And ADT is acting in good faith in bringing the

present motion. Therefore, Plaintiff/Counterclaim Defendant ADT Security Services, Inc.'s

---

[8] "[W]hen analyzing a claim of excusable neglect, courts should take account of all relevant circumstances surrounding the party's omission, including: the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995) (quotation omitted).

[9] Likewise, this Court declines to consider Swenson's allegations that ADT's counsel's law firm has adopted a firm-wide practice of not complying with discovery.

Motion for Leave to Correct Gene Bomgardner's Deposition Testimony Pursuant to Fed. R. Civ. P. 30(e) Out of Time [Docket No. 146] is granted. Gene Bomgardner may sign a statement listing the changes to his deposition transcript and the reasons for making them. The changes to his deposition transcript are limited to those proposed in his affidavit, dated November 30, 2009.

### 3. *Spoliation*

Swenson have taken every opportunity to raise their claim of spoliation, which is based on the allegation that ADT destroyed or concealed Bomgardner's service ticket. In arguing the aforementioned motions, the Swenson revisited the issue of spoliation, which was asserted by Swenson in support of their Motion to Amend/Correct Amended Counterclaim [Docket No. 55], Amended Counterclaim [Docket No. 56], to Add a Claim for Punitive Damages Against Plaintiff ADT Security Services, Inc. [Docket No. 129.] This Court did not decide the issue of spoliation earlier because it was unnecessary to do so for the purposes of Swenson's motions. The parties stated at the hearing on the present motions that they are still awaiting a ruling by this Court on the issue of spoliation. However, this Court does not need to consider the spoliation allegation to decide any of the present motions.

The issue of spoliation typically arises within the context of a motion under Fed. R. Civ. P. 37 or a motion for an adverse jury instruction. Until there is motion under Rule 37 or there is a motion that requires consideration of Swenson's spoliation of evidence allegation, this Court declines to consider—much less address—Swenson's spoliation allegations. A motion pertaining to an adverse jury instruction should be directed to United State District Court Judge John R. Tunheim.

## ORDER

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that:

1.   Defendants/Counterclaimants' Motion to Compel Production of Documents, Including Those Withheld on Grounds of Privilege, and to Compel ADT to Pay for the Reasonable Deposition Preparation Time of Swensons' Experts [Docket No. 152] is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as follows:

    a.   To the extent the motion concerns reasonable deposition preparation time, Defendant/Counterclaim Plaintiff's motion is denied as moot.

    b.   To the extent that the motion concerns Document Nos. 22, 24, 45, 67, 81, 82, the Defendant/Counterclaim Plaintiff's motion is denied as moot.

    c.   Defendant/Counterclaim Plaintiff's motion as it pertains to the Underwriter Laboratories Inc. report is denied.

    d.   Defendant/Counterclaim Plaintiff's motion as it pertains to Document Nos. 1, 4, 5, 6, 7 through 12, 18 through 21, 23, 25, 26, 29, 46 through 66, 68, 69, 70, 73 through 78, 80, 85, 87, 108, and 110 is denied.

    e.   Defendant/Counterclaim Plaintiff's motion as it pertains to Documents Nos. 2, 3, 13 through 17, 27, 28, 30 through 44, 71, 72, 79, 83, 84, 86, 88 through 107, 109, and 111 is granted. Some of the documents contain statements that are solely legal advice. Therefore, in Document No. 2 (ADT-017846), ADT may redact Gregg Ramsey's statement following the word "and" to the period. In Document Nos. 3, 31, 34, 35, 37, 40, 42, and 44 ADT may redact the

sentence in the first paragraph starting with "Please," the sentence beginning with "Both cases…", and the second (2) of the "Manager's Action Steps" or "Managers [sic] Action Steps."[10] ADT shall produce these documents on or before January 24, 2010.

2. Plaintiff/Counterclaim Defendant ADT Security Services, Inc.'s Motion for Leave to Correct Gene Bomgardner's Deposition Testimony Pursuant to Fed. R. Civ. P. 30(e) Out of Time [Docket No. 146] is **GRANTED**. Gene Bomgardner may sign a statement listing the changes to his deposition transcript and the reasons for making them. The changes to his deposition transcript are limited to those proposed in his affidavit, dated November 30, 2009.

3. This Court declines to issue an advisory opinion on the issue of spoliation.

Dated:   January 15, 2010

                                     s/ Arthur J. Boylan
                                     Arthur J. Boylan
                                     United States Magistrate Judge

---

[10] Not all of these documents contain these sections.