# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ADT SECURITY SERVICES, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> VICKI SELIGER SWENSON, as Personal Representative of the Estate of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent; and T.M.L., T.B.L., T.J.L, and T.M.L., minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson, <br><br> Defendants/Counterclaimants. | Civil No. 07-2983 (JRT/AJB) <br><br><br> **ORDER AFFIRMING IN PART AND REVERSING IN PART MAGISTRATE JUDGE'S ORDER** |

Charles C. Eblen, **SHOOK, HARDY & BACON L.L.P.**, 2555 Grand Boulevard, Kansas City, MO 64108-2613, for plaintiff/counterclaim defendant.

Lori L. Barton, **HARPER & PETERSON, P.L.L.C.**, 3040 Woodbury Drive, Woodbury, MN 55129-9617, for defendants/counterclaimants.

This matter is before the Court on plaintiff ADT Security Services, Inc.'s ("ADT") objections to an Order issued by United States Magistrate Judge Arthur J. Boylan on January 15, 2010. The Magistrate Judge granted in part and denied in part defendants Vicki Seliger Swenson, T.M.L., T.B.L., T.J.L., and T.M.L.'s (collectively, "Swenson") motion to compel. ADT objects to those portions of the Order that direct ADT to produce certain documents relating to IP connectivity and a Dateline television program.

For the reasons below, the Court affirms in part and reverses in part the Magistrate Judge's Order.

## BACKGROUND[1]

This case arises out of the tragic murders of Terri Lee and Timothy J. Hawkinson, Sr. On July 29, 2006, Steve Van Keuren, Lee's ex-boyfriend, broke into Lee's home and attacked her. On August 3, 2006, after Van Keuren had been arrested, charged, and released on bond, ADT entered into a residential services contract to install a security system in Lee's home. On August 7, 2006, ADT installed the security system. On September 22, 2006, Van Keuren broke into Lee's home again and killed Lee and Hawkinson.[2] Van Keuren allegedly carried out the murders after cutting the phone lines to the home, breaking a sliding glass door, and walking past two motion detectors. The security system allegedly failed to go off until two of Lee's children fled through the front door. (*See* Mem. Op. & Order at 2, Docket No. 44; Mem. Op. & Order at 2, Docket No. 49; Mem. Op. & Order at 2-3, Docket No. 139.)

The security system included a Telguard TG-4 cellular radio backup that was designed to detect when a telephone line is cut by detecting a drop in voltage and, under such circumstances, to transmit a radio signal indicating that the line had been cut. The

---

[1] The prior orders of the Court and of the Magistrate Judge set forth the detailed history of the case, and the Court reproduces that information here only to the extent necessary to resolve ADT's objections.

[2] On June 27, 2007, Van Keuren was convicted of two counts of first-degree murder, and he was sentenced to serve two consecutive life sentences without the possibility of parole. *See State v. Van Keuren*, 759 N.W.2d 36, 38 (Minn. 2008).

telephone at the Lee residence used Comcast's Voice over Internet Protocol ("VoIP"), rather than a traditional public switched telephone network, to transmit telephone signals. According to Swenson, the Comcast VoIP telephone provides its own voltage, thereby allegedly hindering the Telguard unit's ability to detect a drop in voltage when a line is cut. On the morning of the murders, the Telguard device allegedly failed to detect the voltage drop and therefore did not transmit a radio signal to indicate that the line had been cut. (Am. Answer & Countercl. ¶¶ 117-18, 120, 185, Docket No. 56.)

In June 2007, following extensive media coverage of the Lee and Hawkinson murders, ADT filed this action for declaratory judgment against the estates of Lee and Hawkinson. Swenson, as Personal Representative of the Lee estate, Trustee for Lee's next-of-kin, and Co-Guardian and Co-Conservator of Lee's minor children, filed a counterclaim, alleging negligence, gross negligence, negligent design, negligent instruction and failure to warn, negligent training and negligent supervision, various theories of strict liability, negligent infliction of emotional distress, vicarious liability, violation of state consumer protection and consumer fraud laws, violation of state false advertising law, unlawful trade practices, and breach of express and implied warranties.

On August 13, 2007, NBC's Dateline television program covered the Lee and Hawkinson murders and Swenson's claims against ADT. (ADT's Objections at 10, Docket No. 174.) After learning that Dateline was going to broadcast the program, "ADT's in-house and litigation counsel, in connection with a public relations firm, considered the implications of such widespread media coverage on this case." (*Id.* at 10-11.) They exchanged certain emails "regarding ADT's response to Dateline's coverage

of the murders and the Swensons' liability theories." (*Id.* at 11.) These emails include "several draft versions of ADT's formal response to the Dateline news broadcast, including correspondence regarding" this formal response. (*Id.* at 13 n.7.) The drafts include language that was not used in the final version of ADT's formal response. (*Id.*)

On December 1, 2009, Swenson filed a motion to compel production of certain documents withheld on grounds of privilege. (Docket No. 152.) Also on December 1, 2009, ADT filed a motion for leave to correct the deposition testimony of Gene Bomgardner. (Docket No. 146.) On January 15, 2010, the Magistrate Judge issued an Order addressing those motions. (Docket No. 168.) ADT filed objections with respect to two categories of documents that the Magistrate Judge had ordered ADT to produce: IP connectivity emails (Documents 91-104, and 109[3]) and emails concerning ADT's response to the Dateline program (Documents 71, 79, 83, 84, 86, 88-90, 105-07, and 111). (ADT's Objections, Docket No. 174.)

## ANALYSIS

### I. STANDARD OF REVIEW

The standard of review for an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The Court will reverse the order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).

---

[3] The document numbers appear in ADT's privilege log. (*See* Privilege Log of ADT, Eblen Aff. Ex. A, Docket No. 175.)

## II. OBJECTIONS TO THE JANUARY 15, 2010 ORDER

ADT argues that the attorney-client privilege and the work product doctrine protect the IP connectivity emails and the emails concerning ADT's response to the Dateline program.

The parties agree about the general parameters of the attorney-client privilege and the work product doctrine. (*See* ADT's Objections at 5-6, 8-9, Docket No. 174; Swenson Resp. to ADT's Objections at 4-6, Docket No. 184; *see also* Order at 3-5, Docket No. 168.) Minnesota law defines the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998) (internal quotation marks omitted). "Client communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987) (internal quotation marks omitted). But "the attorney-client privilege does not protect client communications that relate only business or technical data." *Id.* at 403. "[T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence." *Kobluk*, 574 N.W.2d at 440.

Federal Rule of Civil Procedure 26(b)(3)(A) states that, "[o]rdinarily, a party may not discover documents . . . that are prepared in anticipation of litigation . . . by or for

another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Such documents are discoverable, however, if the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). If, pursuant to such a showing, a court orders discovery of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "The work product doctrine was designed to prevent unwarranted inquiries into the files and mental impressions of an attorney, and recognizes that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Simon*, 816 F.2d at 400 (internal quotation marks and citation omitted). The test for determining whether a document was prepared in anticipation of litigation is

> whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Id.* at 401 (internal quotation marks omitted). "Where the work product of the attorneys is intertwined between prospective litigation and non-litigation business purposes, the work product doctrine should properly attach." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996).

With these general principles in mind, the Court turns to ADT's objections.

### A. IP Connectivity Emails

The Magistrate Judge found that the IP connectivity emails are not subject to the attorney-client privilege and do not constitute work product. (Order at 10, Docket No. 168.) The Magistrate Judge concluded that the emails "appear to be concerned with the future actions of another company and how those actions will impact ADT's ability to provide its core services." (*Id.*)

ADT argues that the attorney-client privilege protects the IP connectivity emails because they arise out of a client's request for legal advice from a legal advisor. (ADT's Objections at 5, Docket No. 174.) ADT further argues that the IP connectivity emails were created in anticipation of litigation and are protected under the work product doctrine. (*Id.* at 8.)

The Court finds that the Magistrate Judge did not clearly err in ordering ADT to produce the IP connectivity emails. The emails discuss a potential new technological development that certain individuals thought Comcast was considering for its VoIP lines, and how that development might affect ADT's security systems. The emails concern, at most, an effort to discern the veracity of a report of a potential future development in Comcast's VoIP technology and a related effort to consider the forward-looking technological implications for ADT of that development. The possibility that the technological development might raise concerns similar to those at issue in this litigation is not sufficient to transform the communications into attorney work product or to trigger the attorney-client privilege. *See Simon*, 816 F.2d at 403-04; *In re Copper Market*

*Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("Documents prepared in the ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected by work-product immunity."); *Marvin Lumber*, 168 F.R.D. at 646 ("[T]he mere involvement of an attorney, in the ordinary business activities of a party, cannot legitimately shield those activities from discovery."). The Magistrate Judge's finding is neither clearly erroneous nor contrary to law.

    B.    **Dateline Emails**

The Magistrate Judge addressed the Dateline emails as a whole, and found that they are not subject to the attorney-client privilege and do not constitute work product. (Order at 7, Docket No. 168.) The Magistrate Judge concluded that the documents do not seek legal advice and that "the entire tenor of the documents is to craft a response for a news report concerning ADT." (*Id.*) With respect to documents authored by members of ADT's legal team, the Magistrate Judge concluded that the authors "are acting in a public relations capacity." (*Id.*)

ADT argues that the work product doctrine protects the Dateline emails. (ADT's Objections at 11, Docket No. 174.) ADT claims that "the primary purpose of ADT's response to the Dateline broadcast – and the involvement of ADT's counsel – was to analyze the implications on this case in response to the Swenson Defendants['] decision to present case issues through the local and national media." (*Id.* at 12.) ADT further argues that the attorney-client privilege protects the Dateline emails because ADT's counsel was functioning in a legal capacity when directing ADT's response. (*Id.* at 15.)

ADT contends that counsel "directed and coordinated ADT's response to the Dateline story as part of its defense of this case, not as a routine business function." (*Id.* at 17.)

After reviewing the Dateline emails *in camera*, the Court divides the documents into four categories and discusses each category in turn:

Category 1: Emails Forwarding Media Coverage. Documents 71 and 90 forward media coverage. Document 71 forwards media clips about the murder trial. Document 90 forwards the text and video of the Dateline program and includes a summary of certain portions of the program.

Category 2: Email Requesting Clarification. Document 79 includes a request for clarification of certain information provided by ADT's counsel and forwarded to the author of the email.

Category 3: Emails Preparing for Dateline Response Meetings. Documents 83, 84, 86, and 88 involve meetings to discuss the Dateline response, and information gathered in preparation for those meetings.

Category 4: Drafts and Final Version of ADT's Dateline Statement. Documents 89, 105, 106, and 111 are preliminary drafts of ADT's Dateline statement. ADT's General Counsel authored these drafts, and, with respect to Document 106, ADT's litigation counsel, Charles C. Eblen, is copied on the two emails immediately preceding the email at the top of the chain. According to ADT, Document 107 is the final version of ADT's formal response to the Dateline program. (ADT's Objections at 13 n.7, Docket No. 174.)

### 1. Category 1

The Court finds that the Magistrate Judge did not clearly err in ordering ADT to produce Documents 71 and 90. These emails forward media coverage to individuals at ADT. Although Document 90 includes summaries composed by Ann Lindstrom, ADT's Director of Corporate Communications, ADT has not shown that Lindstrom composed these summaries at the direction of counsel or that they otherwise fall within the attorney-client privilege or constitute work product. Lindstrom likely would have created the document regardless of whether ADT was involved in the *Swenson* litigation. *See In re Copper Market*, 200 F.R.D. at 221. ADT has not shown that the summaries contain an implied or explicit request for legal advice, and therefore the fact that Lindstrom copied counsel on the email does not render it a privileged communication. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer."). The Magistrate Judge's finding with respect to Documents 71 and 90 is neither clearly erroneous nor contrary to law.

### 2. Category 2

The email chain contained in Document 79 includes communications between Lindstrom and Joseph Hauhn at ADT regarding information from ADT's outside legal counsel in the *Swenson* case. Documents relaying and discussing legal advice under the circumstances evident here are protected by the attorney-client privilege. *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000); *cf. In re Bieter Co.*, 16

F.3d 929, 935 (8th Cir. 1994) (noting that the Supreme Court has left the issue for case-by-case determination in cases where federal common law determines the scope and extent of the attorney-client privilege); *Leer v. Chi., Milwaukee, St. Paul & Pac. Ry. Co.*, 308 N.W.2d 305, 308-09 (Minn. 1981) (considering the various tests for determining whether the attorney-client privilege is available in the employer/employee setting, and noting that "[t]he purpose behind the attorney-client privilege is to promote open and honest discussion between clients and their attorneys"). The Court therefore finds that the Magistrate Judge clearly erred in ordering ADT to produce Document 79.

### 3. Category 3

The documents in Category 3 involve discussions of the possible content of ADT's response to the Dateline program and plans for a meeting to discuss ADT's response. In particular, some of the documents discuss information that ADT ultimately did **not** include in its written response. The first two emails copied ADT's General Counsel, and the other two emails were sent directly to him. The context of these emails demonstrates that these communications contain an implicit request for legal advice regarding the content of the Dateline response, and therefore they are protected by the attorney-client privilege. *Simon*, 816 F.2d at 404. Moreover, as discussed in greater detail in the following section, these documents contain work product because, viewed in conjunction with the final version of ADT's response (Document 107), they reflect the mental impressions of counsel about the *Swenson* litigation. The Court therefore finds

that the Magistrate Judge clearly erred in ordering ADT to produce Documents 83, 84, 86, and 88.

### 4. Category 4

Document 107 is the final version of ADT's Dateline response. (ADT's Objections at 13 n.7, Docket No. 174.) Because ADT released this final version to Dateline, ADT has waived any work product or attorney-client privilege that might otherwise attach. *See Kobluk*, 574 N.W.2d at 440; *Pamida, Inc. v. E.S. Originals, Inc.* 281 F.3d 726, 732 (8th Cir. 2002). The Magistrate Judge's finding with respect to Document 107 is neither clearly erroneous nor contrary to law.

Documents 89, 105, 106, and 111 are drafts of Document 107. (ADT's Objections at 13 n.7, Docket No. 174.) They contain statements that ADT did not include in Document 107. ADT's General Counsel wrote each of these drafts, as well as Document 107. These drafts of Document 107 therefore reflect the mental impressions of counsel concerning, at least in part, the *Swenson* litigation. *See Simon*, 816 F.2d at 400; Fed. R. Civ. P. 26(b)(3)(B). The Court has examined the substantive differences between the drafts and concludes that counsel was acting primarily in a legal capacity, rather than simply in a public relations or business capacity, in making revisions to the document. *See Marvin Lumber*, 168 F.R.D. at 645. The Court therefore finds that the Magistrate Judge clearly erred in concluding that the work product doctrine does not apply to these documents.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES in part and SUSTAINS in part** ADT Security Services, Inc.'s objections [Docket No. 174] and **AFFIRMS in part and REVERSES in part** the Order of the Magistrate Judge [Docket No. 168]. Accordingly, **IT IS HEREBY ORDERED** that:

1. With respect to Documents 79, 83, 84, 86, 88, 89, 105, 106, and 111, the Order of the Magistrate Judge is **REVERSED**; and

2. In all other respects, the Order of the Magistrate Judge is **AFFIRMED.**

3. The Court **ORDERS** ADT to produce Documents 71, 90-104, 107, and 109 on or before August 6, 2010.

4. ADT Security Services, Inc.'s Request for Oral Argument [Docket No. 177] is **DENIED as moot**.

DATED: July 26, 2010  
at Minneapolis, Minnesota.

                                                  s/ John R. Tunheim  
                                                  JOHN R. TUNHEIM  
                                                  United States District Judge