# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ADT SECURITY SERVICES, INC., | Civil No. 07-2983 (JRT/AJB) |
| Plaintiff/Counter Defendant, | |
| v. | |
| VICKI SELIGER SWENSON, *as Personal Representative of the Estate of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent*; T.M.L., T.B.L., T.J.L., and T.M.L., *minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson*, | **ORDER NO. 1 ON MOTIONS IN LIMINE** |
| Defendants/Counter Claimants. | |

Amanda M. Cialkowski, Brian N. Johnson, and Cortney G. Sylvester, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for plaintiff/counter defendant.

Paul D. Peterson, Lori L. Barton, and William D. Harper, **HARPER & PETERSON, PLLC**, 3040 Woodbury Drive, Woodbury, MN 55129-9617, for defendants/counterclaimants.


This action arises from the murders of Teri Lynn Lee ("Lee") and Timothy J. Hawkinson, Sr. ("Hawkinson"). Steven Van Keuren ("Van Keuren"), Lee's ex-boyfriend, was convicted of murdering Lee and Hawkinson after breaking into Lee's home. Lee possessed a security system installed by Plaintiff ADT Security Services, Inc. ("ADT") to protect her from Van Keuren, but the system's alarm allegedly did not sound until after the murders. ADT brought this action against the estates of Lee and

Hawkinson, seeking a declaratory judgment that the Residential Services Contract ("the Agreement") signed by Lee limits its liability.  Vicki Seliger Swenson, as the personal representative of the estate and trustee for Lee's next of kin, and Lee's four children (collectively, "the Swensons") subsequently alleged numerous counterclaims against ADT.[1]

This Order addresses (1) the Swensons' motions *in limine* and ADT's objections, and (2) ADT's motion *in limine* to bifurcate the trial.  The Court will grant the Swensons' motions to realign the parties, to use a panoramic digital presentation, and to use a scaled model of Lee's home.  The Court will deny ADT's motion for bifurcation and the Swensons' motion to exclude all evidence related to the exculpatory and limitation of liability provisions of the Agreement.

## ANALYSIS

## I.      REALIGNMENT OF PARTIES

The Swensons move to realign the parties, making the Swensons the plaintiffs and ADT the defendant, in order to decrease potential confusion among the jurors.  ADT agrees that this realignment should occur.  The Court finds that this realignment is warranted because the Swensons bear the burden of proof and the current alignment of the parties may confuse the jury.  *See Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996) ("A district court has wide discretion to set the order of proof

---

[1] A more detailed factual background for this action is available in the Court's March Order.  *See ADT Sec. Servs., Inc. v. Swenson*, No. 07-2983, 2011 WL 1084031, at *2-8 (D. Minn. Mar. 21, 2011).

at trial." (citing *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 704, 706 (8th Cir. 1967))).  The Court will grant the Swensons' motion to realign the parties.

The Swensons also move for permission to open and close the case because they bear the burden of proof.  ADT does not object to the Swensons' motion as long as ADT is allowed to conduct its direct examinations of all ADT witnesses during the Swensons' case-in-chief.  The Swensons do not object to ADT's request.  The Court will grant the Swensons' motion to open and close the case because "[o]rdinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof." *Id.* (citing *Martin v. Chesebrough-Pond's, Inc.*, 614 F.2d 498, 501 (5th Cir. 1980)).  The Court will also allow ADT to conduct its direct examinations of ADT witnesses during the Swensons' case in chief because there is no objection from the Swensons and because beginning with ADT's direct examinations may clarify the testimony for the jury.

ADT further requests that the Swensons not be allowed to inform the jury that ADT originally brought this action against the Swensons.  The Swensons respond that, although ADT's filing of this action is not relevant to the issues of liability or compensatory damages, it is relevant to punitive damages.

The Minnesota punitive damages statute states,

Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial

condition of the defendant, and the total effect of other punishment likely to
be imposed upon the defendant as a result of the misconduct. . . .

Minn. Stat. § 549.20, subd. 3 (2010).  The Swensons have not explained why ADT's filing of this action is relevant to punitive damages.  Based on the information presented, the Court finds that this information is irrelevant under Federal Rule of Civil Procedure 401 and is more prejudicial than probative under Federal Rule of Civil Procedure 403. *See McNeal v. SDG Macerich Props., L.P.*, No. C 07-4015-MWB, 2008 WL 2691047, at *20 (N.D. Iowa July 1, 2008) ("It would be improper for jurors to decide claims based on which ones were filed first, because such decision-making would not be based on the evidence demonstrating the merits or lack thereof of the claims, and the defendants appear to want to invite the jurors to respond emotionally to the timing of the claims . . . ."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.").  Accordingly, the Court will preclude the Swensons from informing the jury that ADT originally filed this action.

## II.    CONTRACT REDACTION

The Swensons move that the Court exclude evidence regarding the exculpatory and limitation of liability provisions of the Agreement signed by Lee during the liability and compensatory damages portion of the trial.  The Swensons assert that portions of the Agreement are unduly prejudicial to their case and irrelevant because the Court has already ruled on many issues related to the Agreement.

The Court finds that the jury must see the entire Agreement to fairly determine whether Lee was fraudulently induced into signing it and whether she reasonably relied on representations made to her about the features and reliability of ADT's security system. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009) (denying claim for fraudulent inducement because reliance on the alleged misrepresentation was unreasonable). In order to prove that ADT fraudulently induced Lee into signing the Agreement, the Swensons must establish the following:

> (1) a false representation by [ADT] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [Lee] to act in reliance thereon; (4) that the representation caused [Lee] to act in reliance thereon; and (5) that [Lee] suffered pecuniary damages as a result of the reliance.

*See id.* at 368. In order to decide the fourth element, the jury must evaluate whether Lee would have relied upon statements allegedly made to her by ADT employees, despite the limitations of liability and other statements in the Agreement. The Swensons may explain to the jury that these portions of the Agreement, including the limitations on liability, are not enforceable if Lee was fraudulently induced into signing the Agreement. However, the Court will allow ADT to enter the entire Agreement into evidence.

## III.    MODEL AND PRESENTATION

The Swensons seek permission to use a panoramic digital presentation constituting a virtual walk-through of the Lee home and the exterior home during opening and/or closing statements. The Swensons also seek to use a scaled model of the Lee home during trial, including during opening and/or closing statements. The Court has reviewed

images of the scaled home and the material in the proposed presentation, and finds that these items will be useful to the jury in understanding what occurred on the night of the murders.  With the caveats noted below, the Court will allow the use of the presentation, and the images included therein, as well as the scaled model.  The Court will now address ADT's specific objections to this material.

### A.      Placement of Detector

ADT objected to the placement of the basement glass breakage detector in some of the Swensons' images and on the scaled model of the home.  The Swensons subsequently submitted affidavits to the Court, stating that they corrected the placement of the detector to reflect its true location on the night of the murders.  (Schmalzbauer Aff., Sept. 16, 2011, Docket No. 384; Pawlikowski Aff., Sept. 10, 2011, Docket No. 384.)  Accordingly, the Court reserves for trial any continuing objections to the detector's placement in the model and images.

The Court will note, however, that it is inclined to admit the images and model into evidence.  Prior to the Swensons' corrections, the sensor was already placed very close to its accurate location on the night of the murders.  ADT may explain any minor deviations in the sensor's placement to the jury and may also admit photographs into evidence that show the sensor's true placement on the night of the murders.

### B.      Photographs of Lee and Hawkinson's Bodies

ADT argues that the Court should exclude two photographs of Lee and Hawkinson's bodies as unduly prejudicial and irrelevant.  (*See* Barton Aff., Ex. E, at 1-2.)

"The admission of photographs is a matter within the sound discretion of the trial court . . . ." *McCrary-El v. Shaw*, 992 F.2d 809, 811 (8th Cir. 1993).  The Court will allow the admission of the photographs because they show little graphic detail of the bodies of either Lee or Hawkinson, and no more than necessary to establish the points for which they are admitted.  *See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 767 F.2d 1151, 1154 (5th Cir. 1985) ("Although unsettling, . . . photographs were not so gruesome that their prejudicial potential absolutely required their exclusion.").

The Court finds that these photographs will assist the jury in picturing Lee's bedroom as it appeared on the night of the murders, locating the placement of various items such as the fanny pack containing Hawkinson's gun, and identifying the ultimate resting places of Lee and Hawkinson.  These issues are relevant because there will be testimony about the position of the bodies, the events surrounding the murders, and the ability of the victims to react and defend themselves from Van Keuren.[2]  Accordingly, the Court will not exclude these photographs.

## C.      Photograph of Gun

ADT objects to the use of a photograph depicting Hawkinson's open fanny pack, with a gun inside, on the floor of Lee's bedroom.  (*See* Barton Aff., Ex. D, at 5.)  ADT argues that this picture is unduly prejudicial because a key issue in the case is whether

---

[2] If the jury believes that the children saw the murders or their aftermath, these photographs will also be relevant to evaluating the children's emotional distress.  (*E.g.*, Harper Aff., Ex. B, at 3, Sept. 22, 2006, Docket No. 380.)  The Court need not decide exactly what the children observed as a precondition to admitting these photographs, because the photographs will assist the jury in understanding the events surrounding the murders.

Hawkinson would have had time to take defensive action if the alarm sounded before the murders.  According to ADT, because Hawkinson did not open the fanny pack on the night of the murders, this photograph may mislead the jury into thinking that the gun was easily accessible to him.

The Court finds that this picture is informative for the jury because it shows how Hawkinson would have needed to open the fanny pack in order to access the gun, and that Hawkinson's gun and ammunition were inside the fanny pack.  The Court will admit this evidence, with a limiting instruction that the fanny pack was not open at the time of the murders.  The jury is highly unlikely to be confused by this limiting instruction, particularly because there will be extensive testimony from both sides about the closed fanny pack and Hawkinson's movements on the night of the murders.

### D.   Photograph of Dining Room

ADT objects that a photograph of the dining room shows a large bouquet of flowers on Lee's dining room table, with a dead plant some distance away.  (*See* Schmalzbauer Aff., Ex. C, DiningRm_7.p2vr.preview.jpg.)  ADT asserts that the bouquet of flowers was not present on the night of the murders, and the plant was not dead.  ADT has not explained why this image is unduly prejudicial to ADT.  The Court will not exclude this photograph because the dead plant is not the focus of the photograph and, even if noticed, such a minor deviation from the scene on the night of the murders is not unduly prejudicial.  The bouquet of flowers is also not prejudicial.  ADT may provide any clarification to the jury regarding the flowers and plant that it deems necessary.

### E.      Photographs of Staircase

ADT requests a clarification that two photographs showing Lee's alleged "escape route" from the bedroom will be shown in sequential order.  (*See* Barton Aff., Ex. D, at 6.)  In Lee's home, there was a storage room off of the bedroom, which led to a back staircase to the garage.  The Swensons will argue that this staircase would have been a potential escape route for Lee had the alarm given her warning of Van Keuren's arrival.  ADT wants assurance that the Swensons will show two sequential photographs of the staircase, not just one, to demonstrate the true length of the staircase to the garage.  The Swensons have agreed to show the photographs in this manner.  ADT may object if the Swensons fail to show the photographs together and in a sequential manner.

### F.      Photographs of Bedroom Floor

ADT objects to the use of a photograph of Lee's blood-splattered bedroom floor without an explanation that the blood is from Van Keuren and not from either Lee or Hawkinson.  (*See id.* at 5.)  ADT also objects to a close-up of a blood-splattered ADT brochure on Lee's bedroom floor.  (*See id.*)  The Court will admit these images.  They demonstrate the state of Lee's bedroom after the murders, including the location of blood and other items in the room, which may be relevant to the victims' and Van Keuren's movements.  Also, the jury may find that the ADT brochure's placement next to Lee's bed is relevant to Lee's level of attention to or concern with her security system.[3]

_____

[3] This Court previously held that "there is no evidence that Lee viewed, let alone relied upon, the brochure."  *See ADT Sec. Servs., Inc.*, 2011 WL 1084031, at *27.  Although the

Further, the Court will not mandate a particular description regarding the source of the blood because this is a disputed factual question for the jury.   ADT may state its arguments regarding the blood and the brochure to the jury, but the Court will not exclude these images as irrelevant or unduly prejudicial.

## IV.    BIFURCATION

ADT moves that the Court bifurcate this action, with the first phase of the trial dealing only with the question of whether ADT fraudulently induced Lee into signing the Agreement.   ADT makes this request in light of this Court's March Order, which held that many of the Swensons' counterclaims against ADT – including most claims in tort – will fail if Lee was not fraudulently induced into signing the Agreement.   *See ADT Sec. Servs., Inc.*, 2011 WL 1084031, at *41.   Because bifurcation will not promote judicial economy or convenience and is not necessary to avoid undue prejudice, the Court denies ADT's motion.

Rule 42(b) of the Federal Rules of Civil Procedure provides the following with respect to the Court's authority to order bifurcation:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.   When ordering a separate trial, the court must preserve any federal right to a jury trial.

Defendant "has the burden of proving that bifurcation will satisfy the expressed objectives of the rule . . . ."   *See* 8 James Wm. Moore et al., Moore's Federal Practice

---

Swensons cannot prove that Lee read and relied upon the content of the brochure, this photograph is evidence that Lee was in possession of the brochure and kept it near her bedside.

¶ 42.20[8] (3d ed. 2011).   In exercising their broad discretion, "district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990).

The Court denies ADT's bifurcation motion because it will not serve the purposes of judicial economy.   The Swensons' fraudulent inducement claim is not "clearly separable" from the remaining claims in this case.  *See id.*  If the jury finds that Lee was not fraudulently induced into signing the Agreement, the jury will still need to evaluate the Swensons' claims for gross negligence, willful and wanton negligence,[4] misrepresentation by omission, breach of limited warranty, and violations of consumer protection statutes.  *See ADT Sec. Servs., Inc.,* 2011 WL 1084031, at *17 (citing *Morgan Co. v. Minn. Mining & Mfg. Co.*, 246 N.W.2d 443, 448 (Minn. 1976) (exculpatory clause inapplicable to claims of "willful and wanton negligence, intentional misconduct, and fraud and misrepresentation")).   Because these claims overlap with the Swensons' fraudulent inducement claim, bifurcation would improperly cause the parties to "present the same evidence twice in separate trials."  *See* 8 Moore's Federal Practice, *supra*, ¶ 42.20[7][c].

---

[4] A recent Eighth Circuit decision clarifies that gross negligence and willful and wanton negligence must be analyzed separately under Minnesota law.  *See Gage v. HSM Elec. Prot. Sec. Solutions, Inc.*, No. 10-2545, 2011 WL 4056325, at *6 (8th Cir. Sept. 14, 2011) ("We conclude the district court erred in finding the line between willful and wanton negligence and gross negligence blurred.   The Minnesota Supreme Court's case law recognizing and developing willful and wanton negligence is still valid, [and] provides a precise definition of the claim .   .") The Swensons have alleged both gross and willful and wanton negligence.

The following is an example of facts that would apply to both bifurcated trials: Lee and Hawkinson allegedly purchased a Telular TG-4 at the advice of an ADT employee in order to keep her alarm system connected to ADT if Van Keuren cut her phone lines. ADT's employees allegedly knew of the threat that Van Keuren posed and Lee's active concern that Van Keuren might cut her phone lines. Although the TG-4 has the capacity to alert ADT as soon as telephone lines are cut ("line fault monitoring"), ADT allegedly disabled this capability on the Lee home. Disabling this feature was allegedly consistent with ADT's policy of not monitoring phone lines due to a large number of false alarms, so ADT employees may have made false representations to Lee about the benefits of the Telular TG-4 device. ADT allegedly failed to inform Lee that her system lacked telephone line fault monitoring.

These facts, if the jury believes them, could serve as a basis for fraudulent inducement: there was allegedly (1) a false representation by ADT of a past or existing material fact susceptible of knowledge (ADT'S policy regarding disabling line fault monitoring); (2) made with knowledge of the falsity of the representation; (3) with the intention to induce Lee to act in reliance thereon; (4) the representation caused Lee to act in reliance thereon (by purchasing the Telular TG-4 and believing that she had line fault monitoring); and (5) Lee suffered pecuniary damages as a result of relying on this feature for her safety. *See Valspar*, 764 N.W.2d at 368. Similarly, these facts could support the Swensons' willful and wanton negligence claim,[5] if ADT employees failed to exercise

---

[5] Willful and wanton negligence is "a failure to exercise ordinary care after discovering another in a position of peril." *See Gage*, 2011 WL 4056325, at *4.

ordinary care in their sale and installation of Lee's security system, despite knowledge of Van Keuren's imminent threat. *See Gage*, 2011 WL 4056325, at *4. These facts could also support claims for gross negligence, misrepresentation by omission, breach of limited warranty, and violations of consumer protection statutes.[6] Because the issues of fraudulent misrepresentation are not clearly separable from the rest of the Swensons' claims, judicial economy does not warrant bifurcation.

ADT argues that issues related to fraudulent inducement do not overlap with the Swensons' other claims because the Swensons' fraudulent inducement claim must focus solely on events that occurred prior to Lee's signing of the Agreement. The Court disagrees. Lee signed the Agreement with ADT on August 3, 2006. An ADT employee visited the Lee home to install, program, and test the ADT security system on August 7, 2006. Some aspects of the August 7, 2006, installation are critical facts related to the Swensons' claim for fraudulent inducement, such as whether ADT disabled the line fault monitoring at Lee's home. These facts may help prove that the earlier representations of ADT employees regarding the system's installation were false and contrary to ADT's policies, and that the Swensons suffered damages as a result of these false representations. Indeed, the Eighth Circuit has held that a party's compliance with contractual obligations is a relevant factor in evaluating claims for fraudulent inducement. *Wixon Jewelers, Inc. v. Di-Star, Ltd.*, 218 F.3d 913, 914 (8th Cir. 2000); *see*

---

[6] Other common factual allegations among the Swensons' claims include ADT's failure to explain "the full range of equipment and services" to Lee, ADT's representation that a shrill siren would sound if Lee's telephone lines were cut, and ADT's movement of the glass break detector away from the sliding glass door where Van Keuren entered Lee's home.

*Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974) ("[A] misrepresentation of a present intention could amount to fraud [if] the promisor had no intention to perform at the time the promise was made."). Accordingly, some facts that took place after August 3, 2006 are relevant both to the Swensons' fraudulent inducement claim and their other claims. Similarly, some facts that took place on and before August 3, 2006 are relevant to claims other than fraudulent inducement.

The Court also disagrees with ADT's contention that, if the Swensons' claim for fraudulent inducement fails, their misrepresentation by omission claims necessarily fail because the Agreement precluded Lee from relying on representations outside of the Agreement. The Agreement states, "YOU ACKNOWLEDGE THAT: (1) WE HAVE EXPLAINED TO YOU THE FULL RANGE OF EQUIPMENT AND SERVICES AVAILABLE TO YOU . . . ." (Compl., Ex. A, Aug. 3, 2011, Docket No. 1.) This assertion in the Agreement permits the jury to consider representations outside of the Agreement. If ADT failed to explain the full range of equipment and services, ADT may be liable for a claim of misrepresentation by omission, even if the Agreement is enforceable. *See Am. Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1486 (D. Minn. 1991) ("The obligation to disclose arises . . . where the circumstances are such that failure to disclose renders misleading statements which have already been made." (citation omitted)). Evidence regarding the statements and actions of ADT employees, both before and after the signing of the Agreement, are relevant to whether the full range of services was explained to Lee as promised in the Agreement. Thus, bifurcating these fraud claims would not promote judicial economy. In fact,

bifurcation increases the risk that the jury may deliver inconsistent results regarding the Swensons' fraud claims when considering evidence relevant to both claims, which is a factor cautioning against bifurcation. *See O'Dell*, 904 F.2d at 1202.

For the same reasons, bifurcation would undermine convenience. Bifurcation furthers convenience when the separable issues are substantially different. *See* 8 Moore's Federal Practice, *supra*, ¶ 42.20[4][b]; *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, No. 03-1064, 2003 U.S. Dist. LEXIS 16881, at *4-5 (D. Minn. Sept. 20, 2003) (denying motion to sever in light of issues' similarity).   In this action, there is no such "substantial difference" between "separable issues."   It would be inconvenient for counsel, parties, witnesses, and jurors to face two trials with repetitious testimony. *See United States v. Beaudet*, No. 03-1132, 2004 WL 1635853, at *2 (D. Minn. July 19, 2004) (citing *i-Systems, Inc. v. Software, Inc.*, No. 02-1951, 2004 WL 742082 (D. Minn. Mar. 29, 2004)).   The Swensons have named numerous witnesses that they may need to call twice if the trial is bifurcated, and it may be inconvenient or impossible for some of these witnesses to appear in court on two separate occasions.   (*See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for a Separate Trial on Def.'s Fraudulent Inducement Claim, Aug. 19, 2011, at 9-12, 15-16, Docket No. 375.)

Finally, ADT will not experience undue prejudice if the trial is not bifurcated.   If "the party seeking bifurcation cannot show prejudice, a motion for bifurcation will be denied." *See* 8 Moore's Federal Practice, *supra*, ¶ 42.20[4][c]; *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (finding that the district court did not abuse its discretion in refusing to bifurcate when defendant failed to show prejudice).   The Court is

confident that the jurors will look objectively at the evidence and that any potential prejudice or confusion over the Swensons' claims can be cured through the jury instructions and verdict form.  *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 625 (N.D. Ill. 2000) ("[J]urors bring a collective wisdom, common sense and experience as well as intelligence and dedication to their task.") (citation omitted).  In contrast, the Swensons may experience unfair and unnecessary prejudice, if they are forced to repeat testimony and are unable to produce some witnesses for two separate trials.  Thus, because bifurcation will not promote judicial economy or convenience and is not necessary to avoid prejudice, the Court denies ADT's motion for bifurcation.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The Swensons' Motion *in Limine* No. 1 to Realign the Parties [Docket No. 355] is **GRANTED**.  The Swensons shall not present any evidence or argument to the jury that ADT was once the Plaintiff in this action.  The Defendant is now ADT Security Services, Inc., and the Plaintiffs are now Vicki Seliger Swenson, as Personal Representative of the Swensons of Teri Lynn Lee and as Trustee for the Next-of-Kin of Teri Lynn Lee, Decedent and T.M.L., T.B.L., T.J.L., and T.M.L., minors, through their Co-Guardians and Co-Conservators, Erik P. Swenson and Vicki Seliger Swenson.  Hereafter, the caption of this matter shall be as follows:

VICKI   SELIGER   SWENSON,   *as   Personal
Representative of the Estate of Teri Lynn Lee and as
Trustee for the Next-of-Kin of Teri Lynn Lee,
Decedent*; T.M.L., T.B.L., T.J.L., and T.M.L., *minors,
through their Co-Guardians and Co-Conservators,
Erik P. Swenson and Vicki Seliger Swenson*,

Plaintiffs,

v.

ADT SECURITY SERVICES, INC.,

Defendant.

2.      The Swensons' Motion *in Limine* No. 1 to Allow the Swensons to Open and Close the Case [Docket No. 355] is **GRANTED**.  ADT is permitted to conduct its direct examinations of all ADT witnesses during the Swensons' case-in-chief.

3.      The Swensons' Motion *in Limine* No. 2 to Exclude All Evidence Related to the Exculpatory and Limitation of Liability Provisions of the Residential Service Contract [Docket No. 355] is **DENIED**.

4.      The Swensons' Motion *in Limine* No. 3 to Allow the Use of a Panoramic Digital Presentation [Docket No. 355] is **GRANTED**.  At trial, if necessary, the Court may enter a limiting instruction regarding the image of Hawkinson's gun, instructing the jury that Hawkinson's fanny pack was not open at the time of the murders.  (See Barton Aff., Ex. D, at 5.)  Any remaining objections regarding the Swensons' photographs of the back staircase or the placement of the glass breakage detector in photographs will be addressed at trial.

5.    The Swensons' Motion *in Limine* No. 4 to Allow the Use of a Scaled Model of the Lee Home [Docket No. 355] is **GRANTED**.  Any remaining objections regarding the Swensons' placement of the glass breakage detector on the model will be addressed at trial.

6.    ADT's Motion *in Limine* to Bifurcate for a Separate Trial on the Swensons' Fraudulent Inducement Claim [Docket No. 360] is **DENIED.**


DATED:   September 21, 2011                    ___s/ John R. Tunheim___
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                  United States District Judge